115 T.C. No. 16

UNITED STATES TAX COURT

MARIN I. AND ANITA J. JOHNSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5114-98.                      Filed September 15, 2000.

P is a merchant seaman who captains a vessel that
sails worldwide carrying equipment of the U.S.
military.  The vessel sails infrequently in the general
vicinity of P's residence, which also is not near the
office of P's employer.  P's employer furnishes him
with lodging and meals without charge while he works on
the vessel, but P pays for his other (incidental)
travel expenses.  P reported his incidental travel
expenses as miscellaneous itemized deductions for 1994
and 1996, ascertaining the amounts of those deductions
by using the full Federal per diem rates for meal and
incidental expense (M&IE rates).  The M&IE rates are
referenced in Rev. Proc. 96-28, 1996-1 C.B. 686, and
its progenitors, which provide that an employee, in
lieu of substantiating his or her actual travel
expenses, may use the M&IE rates to compute the cost of
meal and incidental expenses paid while working away
from home.  See, e.g., <u>id.</u> sec. 4.03, 1996-1 C.B. at
688.  P has no receipts for his incidental travel
expenses.

<u>Held</u>:  P's tax home is the situs of his residence.

<u>Held</u>, <u>further</u>, P's testimony, by itself, supports a finding that P paid incidental travel expenses while employed away from his tax home.

<u>Held</u>, <u>further</u>, P's use of the M&IE rates is limited to the portions thereof that are attributable to incidental expense.

<u>Steven R. Stolar</u> and <u>Kristina S. Keller</u>, for petitioners.

<u>Ric D. Hulshoff</u>, for respondent.

LARO, <u>Judge</u>:  Respondent determined deficiencies of $945 and $1,022 in petitioners' 1994 and 1996 Federal income taxes, respectively.  The deficiencies stem from respondent's disallowance of $3,784 and $3,654 that Marin I. Johnson (petitioner) claimed for the respective years as miscellaneous itemized deductions for travel expenses connected to his employment as a merchant seaman.  Petitioner ascertained the amount of those deductions by using the full Federal per diem rates for meal and incidental expense (M&IE rates) referenced in Rev. Proc. 96-28, 1996-1 C.B. 686, and its progenitors.  See, e.g., <u>id.</u> sec. 4.03, 1996-1 C.B. at 688.  Petitioner's actual expenses consisted solely of incidental expenses; while he was at work, his employer furnished him with lodging and meals at no charge.

We must decide whether petitioner may deduct the claimed amounts.  We hold he may not.  We hold that petitioner's use of

the M&IE rates is limited to the incidental expense portions of those rates and that his deductions must be determined accordingly.  Unless otherwise indicated, section references are to the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Most facts were stipulated.  The parties' stipulations of fact and the exhibits submitted therewith are incorporated herein by this reference.  The stipulations of fact are found accordingly.  Petitioners resided in Freeland, Washington (Freeland), when we filed their petition.  Freeland is a community on Whidbey Island, Washington, located in the Puget Sound approximately 70 miles east of Port Angeles, Washington, and approximately 75 miles north of Tacoma, Washington.[1]

Petitioners are husband and wife.  They and their daughter resided during the subject years in a house (personal residence) that petitioners owned in Freeland.  During 1994, petitioner paid $12,640 of mortgage interest and $4,412 of real estate taxes on the personal residence.  He paid $11,002 of mortgage interest and $4,799 of real estate taxes on the personal residence during 1996.

---

[1] We have taken judicial notice of this fact.

Petitioners' primary source of income is petitioner's wages from Crowley American Transport, Inc. (Crowley), the primary office of which is in Jacksonville, Florida, and from the American Maritime Officers Vacation Plan.[2]  Crowley employs petitioner as the captain of its vessel the M/V American Falcon (Falcon).  Crowley primarily charters the Falcon to the U.S. military to transport military vehicles and other military equipment worldwide.  Petitioner's work requires that he work continuously on or around the Falcon for long periods of time and that he then vacation for approximately 2 months.  Petitioner and his crew generally fly to and from the situs of the Falcon at the beginning and end of their work schedule.

During 1994, petitioner worked from April 22 to July 10 and from September 7 to December 8, for a total of 173 days.  During 1996, petitioner worked from January 1 to February 3 and from June 26 to December 13, for a total of 205 days.  Petitioner's duties included captaining the sailing of the Falcon from one city to another and performing any assignment required by his employer while the Falcon was docked at port.

---

[2] On the basis of the record, we infer that Crowley pays wages to petitioner while he works for Crowley and that the American Maritime Officers Vacation Plan pays wages to petitioner while he is on vacation.

Petitioner sailed the <u>Falcon</u> to and from the cities set forth in the schedule below.[3]  The <u>Falcon</u> was generally at sea between each departure and immediately following arrival date set forth in the schedule, and the <u>Falcon</u> was generally at port on and between each arrival and immediately following departure date.

| <u>Date</u> | <u>Status</u> | <u>Location</u> |
| --- | --- | --- |
| <u>1994</u> | | |
| Apr. 22 | Joined | Gulfport, Miss., U.S.A. |
| Apr. 22 | Departed | Gulfport, Miss., U.S.A. |
| Apr. 26 | Arrived | Bayonne, N.J., U.S.A. |
| Apr. 27 | Departed | Bayonne, N.J., U.S.A. |
| May 6 | Arrived | Rotterdam, The Neth. |
| May 9 | Departed | Rotterdam, The Neth. |
| May 19 | Arrived | Bayonne, N.J., U.S.A. |
| May 21 | Departed | Bayonne, N.J., U.S.A. |
| May 23 | Arrived | Jacksonville, Fla., U.S.A. |
| May 24 | Departed | Jacksonville, Fla., U.S.A. |
| June 5 | Arrived | Hommelvik, Nor. |
| June 7 | Departed | Hommelvik, Nor. |
| June 10 | Arrived | Rotterdam, The Neth. |
| June 11 | Departed | Rotterdam, The Neth. |
| June 19 | Arrived | Bayonne, N.J., U.S.A. |
| June 20 | Departed | Bayonne, N.J., U.S.A. |
| June 29 | Arrived | Rotterdam, The Neth. |
| June 29 | Departed | Rotterdam, The Neth. |
| June 30 | Arrived | Bremerhaven, F.R.G. |

---

[3] The word "Departed" connotes that the <u>Falcon</u> left the corresponding city on the corresponding date.  The word "Arrived" connotes that the <u>Falcon</u> arrived in the corresponding city on the corresponding date.  The word "Joined" connotes that petitioner resumed working on the <u>Falcon</u> on the corresponding date and in the corresponding city following his vacation.  The word "Left" connotes that petitioner ceased working on the <u>Falcon</u> on the corresponding date and in the corresponding city to begin his vacation.

```
July 1          Departed    Bremerhaven, F.R.G.
July 10         Arrived     [1]
July 10         Left        [1]

Sept. 7         Joined      Beaumont, Tex., U.S.A.
Sept. 7         Departed    Beaumont, Tex., U.S.A.
Sept. 9         Arrived     Gulfport, Miss., U.S.A.
Sept. 12        Departed    Gulfport, Miss., U.S.A.
Sept. 14        Arrived     Guantanamo, Cuba
Sept. 17        Departed    Guantanamo, Cuba
Sept. 20        Arrived     Bayonne, N.J., U.S.A.
Sept. 21        Departed    Bayonne, N.J., U.S.A.
Sept. 25        Arrived     Port-au-prince, Haiti
Sept. 26        Departed    Port-au-prince, Haiti
Oct. 7          Arrived     Bremerhaven, F.R.G.
Oct. 9          Departed    Bremerhaven, F.R.G.
Oct. 18         Arrived     Port Said, Egypt
Oct. 19         Departed    Port Said, Egypt
Oct. 27         Arrived     Shubai
Oct. 29         Departed    Shubai
Oct. 30         Arrived     Dammam, Saudi Arabia
Oct. 30         Departed    Dammam, Saudi Arabia
Oct. 30         Arrived     Bahr.
Nov. 1          Departed    Bahr.
Nov. 2          Arrived     Dubai, U.A.E.
Nov. 3          Departed    Dubai, U.A.E.
Nov. 9          Arrived     Port Suez, Egypt
Nov. 10         Departed    Port Suez, Egypt
Nov. 14         Arrived     Tekirdag, Turk.
Nov. 14         Departed    Tekirdag, Turk.
Nov. 19         Arrived     Rota, Spain
Nov. 20         Departed    Rota, Spain
Dec. 2          Arrived     Port-au-prince, Haiti
Dec. 4          Departed    Port-au-prince, Haiti
Dec. 8          Arrived     Beaumont, Tex., U.S.A.
Dec. 8          Left        Beaumont, Tex., U.S.A.
```

1996

```
Jan. 1          Joined      Dubai, U.A.E.
Jan. 7          Departed    Dubai, U.A.E.
Jan. 14         Arrived     Port Suez, Egypt
Jan. 15         Departed    Port Suez, Egypt
Jan. 16         Arrived     Ashdod, Isr.
Jan. 17         Departed    Ashdod, Isr.
Jan. 21         Arrived     Gibraltar, Gib.
Jan. 23         Departed    Gibraltar, Gib.
```

| | | |
|---|---|---|
| Feb. 2 | Arrived | Wilmington, N.C., U.S.A. |
| Feb. 3 | Left | Wilmington, N.C., U.S.A. |
| | | |
| June 26 | Joined | Aqaba Port, Jordan |
| June 28 | Departed | Aqaba Port, Jordan |
| June 28 | Arrived | Port Suez, Egypt |
| June 29 | Departed | Port Suez, Egypt |
| June 30 | Arrived | Iskendren, Turk. |
| July 2 | Departed | Iskendren, Turk. |
| July 3 | Arrived | Port Said, Egypt |
| July 5 | Departed | Port Said Egypt |
| July 6 | Arrived | Aqaba Port, Jordan |
| July 8 | Departed | Aqaba Port, Jordan |
| July 13 | Arrived | Raysut, Oman |
| July 14 | Departed | Raysut, Oman |
| July 18 | Arrived | Port Suez, Egypt |
| July 19 | Departed | Port Suez, Egypt |
| July 28 | Arrived | Bremerhaven, F.R.G. |
| July 30 | Departed | Bremerhaven, F.R.G. |
| Aug. 2 | Arrived | Muuga, Est. |
| Aug. 3 | Departed | Muuga, Est. |
| Aug. 3 | Arrived | Riga, Russ. |
| Aug. 4 | Departed | Riga, Russ. |
| Aug. 5 | Arrived | Klaipeda, Russ. |
| Aug. 5 | Departed | Klaipeda, Russ. |
| Aug. 8 | Arrived | Antwerp, Belg. |
| Aug. 9 | Departed | Antwerp, Belg. |
| Aug. 17 | Arrived | Port Said, Egypt |
| Aug. 18 | Departed | PortSaid, Egypt |
| Sept. 5 | Arrived | Pusan, S. Korea |
| Sept. 11 | Departed | Pusan, S. Korea |
| Sept. 12 | Arrived | Pohang, S. Korea |
| Sept. 13 | Departed | Pohang, S. Korea |
| Sept. 15 | Arrived | Naha, Japan |
| Sept. 16 | Departed | Naha, Japan |
| Sept. 18 | Arrived | Pusan, S. Korea |
| Sept. 21 | Departed | Pusan, S. Korea |
| Sept. 23 | Arrived | Okinawa, Japan |
| Sept. 28 | Departed | Okinawa, Japan |
| Oct. 12 | Arrived | Concord, Cal., U.S.A. |
| Oct. 15 | Departed | Concord, Cal., U.S.A. |
| Oct. 16 | Arrived | Oakland, Cal., U.S.A. |
| Oct. 19 | Departed | Oakland, Cal., U.S.A. |
| Oct. 20 | Arrived | Port Angeles, Wash., U.S.A. |
| Oct. 20 | Departed | Port Angeles, Wash., U.S.A. |
| Oct. 21 | Arrived | Tacoma, Wash., U.S.A. |
| Oct. 23 | Departed | Tacoma, Wash., U.S.A. |

```
Oct. 26          Arrived     Port Hueneme, Cal., U.S.A.
Oct. 27          Departed    Port Hueneme, Cal., U.S.A.
Nov. 1           Arrived     Pearl Harbor, Haw., U.S.A.
Nov. 2           Departed    Pearl Harbor, Haw., U.S.A.
Nov. 11          Arrived     Guam
Nov. 15          Departed    Guam
Nov. 18          Arrived     Naha, Japan
Nov. 19          Departed    Naha, Japan
Nov. 21          Arrived     Pusan, S. Korea
Nov. 23          Departed    Pusan, S. Korea
Nov. 24          Arrived     Naha, Japan
Nov. 28          Departed    Naha, Japan
Nov. 30          Arrived     Yokohama, Japan
Dec. 2           Departed    Yokohoma, Japan
Dec. 13          Arrived     Port Angeles, Wash., U.S.A.
Dec. 13          Left        Port Angeles, Wash., U.S.A.
```

[1] The record does not indicate the port in which the Falcon arrived on July 10, 1994, nor the city from which petitioner left on that date to begin his vacation.

While petitioner was at work, Crowley provided him with lodging and meals at no charge.  Petitioner had to and did pay his other expenses, and the Falcon had a small store on board from which crew members were allowed to purchase items such as hygiene products, foul weather gear, and bottled water. Petitioner neither was entitled to nor received reimbursement for any of his expenses.  While he was at work, petitioner purchased incidental travel items such as hygiene products and bottled water, and he paid for laundry, dry cleaning, and grooming services and the cost of transportation from the Falcon to the location of the service providers.  Petitioner also was required to and did purchase clothing and other necessities to adapt to

the climates for which he was required to sail without prior notice.

On his 1994 Federal income tax return, as amended, petitioner claimed a miscellaneous itemized deduction of $3,784 for meals and entertainment related to his employment by Crowley; the claimed amount took into account the 50-percent limitation for meals and entertainment provided by section 274(n). Petitioner reported $5,712 of miscellaneous itemized deductions for 1994, claiming that he was entitled to deduct $3,377 of that amount after taking into account the 2-percent floor of section 67. Petitioner has no receipts to support the claimed $3,784 deduction. Petitioner used the per diem substantiation method of the applicable revenue procedures and ascertained the amount of that deduction by using the full M&IE rate for each city to which he traveled. The $3,784 deduction related solely to the incidental expenses which petitioner paid during 1994 while working on the Falcon.

On his 1996 Federal income tax return, petitioner claimed a miscellaneous itemized deduction of $4,912 for business expenses other than meals and entertainment and a $3,654 miscellaneous itemized deduction for meals and entertainment; both amounts were related to his employment by Crowley, and the latter amount took into account the 50-percent limitation of section 274(n) for meals and entertainment. Petitioner reported $10,239 of

miscellaneous itemized deductions for 1996, claiming on that return that he was entitled to deduct $7,811 of that amount after taking into account the 2-percent floor of section 67. Petitioner has no receipts to support the claimed deduction of $3,654. Petitioner used the per diem substantiation method of the applicable revenue procedures and ascertained the amount of that deduction by using the full M&IE rate for each city to which he traveled. The $3,654 deduction related solely to the incidental expenses which petitioner paid during 1996 while working on the Falcon.

Respondent determined that petitioner was not entitled to deduct the $3,784 and $3,654 amounts claimed for 1994 and 1996, respectively.

OPINION

We must decide whether petitioner may deduct the cost of the incidental travel items which he purchased during the subject years while working away from his personal residence. Petitioner argues he may. Petitioner asserts that he incurred the costs while working away from home on business. Petitioner asserts that the applicable revenue procedures mentioned herein dispense with the need to substantiate the amounts of those costs in order to deduct them. Respondent argues that petitioner may not deduct those costs. Respondent asserts primarily that petitioner had no tax home. Respondent asserts secondly that petitioner did not

prove that he actually incurred the claimed expenses; respondent asserts that petitioner's testimony standing alone is insufficient proof for this purpose. Respondent asserts thirdly that petitioner may not use the subject revenue procedures to ascertain the amounts of his deductions because, respondent asserts, those revenue procedures do not apply when only incidental expenses are incurred.

We agree with petitioner that he is entitled to the claimed deductions but disagree with him as to the amounts of those deductions. We hold that petitioner's deductions are limited to the incidental expense portions of the applicable M&IE rates. We begin our analysis with the relevant statutory provisions. An individual may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. See sec. 162(a). Services performed by an employee constitute a trade or business for this purpose, see O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988), and ordinary and necessary expenses generally include amounts which an employee pays while traveling away from home in connection with his or her employment, see sec. 162(a)(2). Section 162 does not, however, allow a taxpayer to deduct travel expenses attributable to personal, living, or family expenses. See sec. 262. Nor does section 162 allow a taxpayer to deduct travel expenses absent either compliance with the substantiation requirements of section

274(d) or the fulfillment of criteria set forth by the

Commissioner as to expenditures less than a stated amount (de

minimis expenses).  See sec. 274(d); see also sec. 1.274-5T(j),

Temporary Income Tax Regs., 50 Fed. Reg. 46032 (Nov. 6, 1985)

(authorizes the Commissioner to provide rules under which

taxpayers may deduct a set amount in lieu of substantiation for

meals while traveling away from home).

The Commissioner first set forth the criteria for de minimis

expenditures in Rev. Proc. 89-67, 1989-2 C.B. 795.  There, the

Commissioner provided that "the amount of ordinary and necessary

business expenses of an employee for lodging, meal, and/or

incidental expenses incurred while traveling away from home will

be deemed substantiated * * * when * * * [the employer] provides

a per diem allowance" to the employee equal to the applicable

M&IE rate.[4]  Id. secs. 1, 3, 1989-2 C.B. at 795, 796.  The

---

[4] Government employees are generally entitled to a per diem allowance for official travel away from their official stations, as payment for lodging, meals, and related incidental expenses. See 41 C.F.R. secs. 301-1.2, 301-7.1 (1994 & 1996).  The per diem allowance, which includes a maximum amount for lodging expenses and a fixed amount for M&IE, varies depending on the area of travel.  See 41 C.F.R. sec. 301-7.3 (1994 & 1996).  The Administrator of General Services sets the per diem allowance for travel to areas in the continental United States (CONUS rates). The Department of Defense sets the per diem allowance for travel to nonforeign areas outside the continental United States.  The Department of State sets the per diem allowance for travel to foreign areas.  See id.  The list of the amounts of these per diem allowances, including the breakdown of the portions attributable to lodging and M&IE, is referenced in 41 C.F.R. sec.
(continued...)

Commissioner provided that "The term 'incidental expenses' includes, but is not limited to, expenses for laundry, cleaning and pressing of clothing, and fees and tips for services, such as for waiters and baggage handlers."  Id. sec. 3.02(4), 1989-2 C.B. at 797.  The Commissioner provided that "The term 'incidental expenses' does not include taxicab fares or the costs of telegrams or telephone calls."  Id.

Rev. Proc. 89-67, supra, was silent as to the situation where an employee without a travel allowance incurred traveling expenses while employed away from home.  The Commissioner first addressed that subject in Rev. Proc. 90-60, 1990-2 C.B. 651, which provided rules on the subject matter of the predecessor revenue procedure as well as rules addressing the situation where an employee not subject to a travel allowance incurred traveling expenses while employed away from home.  See id. sec. 1, 1990-2 C.B. at 651.  Section 1 of Rev. Proc. 90-60, supra, provided generally that an employee, in lieu of substantiating his or her actual expenses, could "use [the applicable M&IE rate or rates] in computing the deductible costs of business meal and incidental expenses paid or incurred while traveling away from home."  The other relevant provisions of Rev. Proc. 90-60, 1990-2 C.B. at 652-653, 655, provided specifically:

---

[4](...continued)
301-7.3 (1994 & 1996).

SEC. 3.  DEFINITIONS

\*        \*        \*        \*        \*        \*        \*

.02 FEDERAL PER DIEM RATE.

(1)  General rule.  The Federal per diem rate is equal to the sum of the Federal lodging expense rate and the Federal meal and incidental expense (M&IE) rate for the locality of travel.  The Federal per diem rate, the Federal lodging expense rate, and the Federal M&IE rate for a locality in the continental United States ("CONUS") are set forth in Appendix A of 41 C.F.R., Chapter 301.  See 41 C.F.R. Part 301-7 (1990) for specific rules regarding these Federal rates.  The Federal per diem rates for nonforeign localities outside the continental United States ("OCONUS") (including Alaska, Hawaii, Puerto Rico, the Northern Mariana Islands, and the possessions of the United States) are established by the Secretary of Defense and listed in Civilian Personnel Per Diem Bulletins published periodically in the Federal Register.  See, e.g., Civilian Personnel Per Diem Bulletin Number 153, 55 Fed. Reg. 50,864 (December 11, 1990).  The Federal per diem rates for foreign OCONUS localities are established by the Secretary of State and published, together with the rates for nonforeign OCONUS localities, in the Per Diem Supplement to the Standardized Regulations (Government Civilians, Foreign Areas).  See, e.g., Maximum Travel Per Diem Allowances for Foreign Areas, PD Supplement 319, issued December 1, 1990.

(2)  Outside CONUS.  For OCONUS travel away from home, if a separately identified Federal lodging expense rate or Federal M&IE rate does not exist for the OCONUS locality of travel, 60 percent of the applicable Federal per diem rate for that locality of travel is treated as equivalent to the Federal lodging expense rate for that locality and 40 percent of the applicable Federal per diem rate for that locality of travel is treated as equivalent to the Federal M&IE rate for that locality.  If a separately identified Federal lodging expense rate or Federal M&IE rate is adopted for an OCONUS locality of travel for which no such separately identified rate previously existed,

that rate shall apply to all travel within such locality beginning 30 days after its publication.

(3)  Locality of travel.  The term "locality of travel" means the locality where an employee traveling away from home in connection with the performance of services as an employee of the employer stops for sleep or rest.

(4)  Incidental expenses.  The term "incidental expenses" includes, but is not limited to, expenses for laundry, cleaning and pressing of clothing, and fees and tips for services, such as for waiters and baggage handlers.  The term "incidental expenses" does not include taxicab fares or the costs of telegrams or telephone calls.

SEC. 4.  PER DIEM SUBSTANTIATION METHOD

     *       *       *       *       *       *       *

.03 OPTIONAL METHOD FOR MEALS ONLY DEDUCTION.  In lieu of using actual expenses, employees and self-employed individuals, in computing the amount allowable as a deduction for ordinary and necessary meal and incidental expenses paid or incurred for travel away from home, may use an amount computed at the Federal M&IE rate for the locality of travel for each calendar day (or part thereof * * *) the employee or self-employed individual is away from home.  Such amount will be deemed substantiated for purposes of paragraphs (b)(2) (travel away from home) and (c) of section 1.274-5T of the temporary regulations, provided the employee or self-employed individual substantiates the elements of time, place, and business purpose of the travel expenses in accordance with those regulations.

     *       *       *       *       *       *       *

SEC. 6. LIMITATIONS AND SPECIAL RULES

.01  In general.  The Federal per diem rate, the Federal lodging expense rate, and the Federal M&IE rate described in section 3.02 for the locality of travel will be applied in the same manner as applied under the Federal Travel Regulations, 41 C.F.R. Part 301-7

(1990), except as provided in sections 6.02 through 6.04.

.02 Federal per diem or lodging expense rate. A receipt for lodging expenses is not required in order to apply the Federal per diem rate or the Federal lodging expense rate for the locality of travel.

.03 Federal per diem or M&IE rate. A payor is not required to reduce the Federal per diem rate or the Federal M&IE rate for the locality of travel for meals provided in kind, provided the payor has a reasonable belief that meal and incidental expenses were or will be incurred by the employee. * * *

The Commissioner restated the rules of Rev. Proc. 90-60, supra, almost verbatim in subsequent revenue procedures, each of which superseded the prior revenue procedure on the subject. See Rev. Proc. 92-17, 1992-1 C.B. 679 (supersedes Rev. Proc. 90-60, supra, for meal and incidental expenses paid by an employee for travel while away from home after February 28, 1992); Rev. Proc. 93-21, 1993-1 C.B. 529 (supersedes Rev. Proc. 92-17, supra, for meal and incidental expenses paid by an employee for travel while away from home after March 11, 1993); Rev. Proc. 93-50, 1993-2 C.B. 586 (supersedes Rev. Proc. 93-21, supra, for meal and incidental expenses paid by an employee for travel while away from home after December 31, 1993); Rev. Proc. 94-77, 1994-2 C.B. 825 (supersedes Rev. Proc. 93-50, supra, for meal and incidental expenses paid by an employee for travel while away from home after December 31, 1994); Rev. Proc. 96-28, 1996-1 C.B. 686 (supersedes Rev. Proc. 94-77, supra, for meal and incidental

expenses paid by an employee for travel while away from home after March 31, 1996).  Each of these revenue procedures clarified that the use of the M&IE rates was not mandatory and that a taxpayer could deduct actual allowable expenses if he or she had adequate records or other supporting documentation.  See, e.g., Rev. Proc. 96-28, sec. 1, 1996-1 C.B. at 686; Rev. Proc. 94-77, sec. 1, 1994-2 C.B. at 825.

Respondent argues primarily that these revenue procedures have no applicability to this case because, respondent asserts, petitioner's employment on the Falcon was not away from home. Respondent characterizes petitioner as an itinerant, meaning that he had no tax home.  Respondent asserts that a taxpayer may have a tax home only if he or she incurs duplicative living expenses. Respondent asserts that petitioner is without a tax home because he did not incur duplicative living expenses since his employer furnished him with meals and lodging without charge.  Respondent asserts that petitioner's claimed incidental expenses were not duplicative of any expense that he actually incurred as to his personal residence.  Respondent relies primarily on Henderson v. Commissioner, 143 F.3d 497 (9th Cir. 1998), affg. T.C. Memo. 1995-559, and Rev. Rul. 73-529, 1973-2 C.B. 37.

We disagree with respondent's assertion that petitioner had no tax home.  This Court's jurisprudence holds that an individual's tax home is generally the location of his or her

principal place of employment.  See <u>Daly v. Commissioner</u>, 72 T.C. 190 (1979); <u>Kroll v. Commissioner</u>, 49 T.C. 557, 561-562 (1968); cf. <u>Commissioner v. Flowers</u>, 326 U.S. 812 (1946).  If an individual does not have a principal place of employment, we generally deem the situs of the individual's permanent residence to be his or her tax home.  See <u>Rambo v. Commissioner</u>, 69 T.C. 920 (1978); <u>Dean v. Commissioner</u>, 54 T.C. 663 (1970); <u>Leach v. Commissioner</u>, 12 T.C. 20 (1949).  We consider a person who has neither a permanent residence nor a principal place of employment to be an itinerant without a tax home.  See <u>Wirth v. Commissioner</u>, 61 T.C. 855, 859 (1974); <u>Hicks v. Commissioner</u>, 47 T.C. 71 (1966).

Petitioner had no principal place of employment.  He did, however, have a permanent residence; to wit, his personal residence.  We believe that petitioner's tax home was the situs of his personal residence in Freeland, where he resided with his wife and their daughter.  See <u>Leach v. Commissioner</u>, <u>supra</u>.[5] Unlike the taxpayer in <u>Henderson v. Commissioner</u>, <u>supra</u>, who

---

[5] In <u>Leach v. Commissioner</u>, 12 T.C. 20 (1949), we held that the taxpayer's tax home was the situs of his personal residence, and we let him deduct the costs which he paid to lodge near some of his work sites.  The taxpayer had no principal place of employment and resided in his personal residence with his wife and child.  He worked away from that residence for 49 weeks of the year and could not move his wife and child to the area of any of his work sites mainly because he was at each of the sites for a short and indefinite period.

lived with his parents practically without charge in the situs that he argued was his tax home, petitioner was primarily responsible for maintaining financially his personal residence, he had an ownership interest in his personal residence, and he contributed to his household there in a valuable and indispensable way.  Petitioner also spent a substantial part of each year at his personal residence.  Whereas the taxpayer in Henderson v. Commissioner, supra, worked for his employer away from his claimed tax home approximately 85 percent of the year, petitioner was required by his employer to be away from his personal residence only 47.4 percent of 1994 and only 56.4 percent of 1996.

Petitioner also had a legitimate reason for maintaining his personal residence in Freeland while traveling throughout the world with and for his employer.  First, petitioner's family did not travel with him while he worked; thus, petitioner was required to maintain a family residence somewhere.  We refuse to second guess petitioner's decision to maintain his family residence in Freeland, instead of moving his family to the location of his Florida employer or to one of the many cities to which he traveled.  Cf. Leach v. Commissioner, supra.  To have a tax home for purposes of section 162(a), a taxpayer need not

maintain a residence in a city in which he or she actually works.[6]  See id.

Second, unlike the taxpayer in Henderson v. Commissioner, supra, petitioner would have incurred a substantial out-of-pocket duplication of lodging and meal expenses while he worked but for the fact that his employer furnished him with those items at no charge.  Had petitioner's employer not done so, petitioner would have incurred the duplicative out-of-pocket expenses which respondent argues are necessary for a finding of a tax home.  Contrary to respondent's assertion, we do not believe that a finding of a tax home for purposes of section 162(a) turns on whether an employer provides lodging and meals to an employee without charge as part of the employee's compensation package.  See Henderson v. Commissioner, supra at 499 ("A taxpayer may [as opposed to will] have no tax home * * * if he continuously

_____

[6] As a point of fact, however, petitioner did work near his personal residence on a few occasions.  Respondent points to the parties' stipulation that petitioner's "employer did not require petitioner Marin Johnson to perform services as a ship master in the Freeland, Washington area during 1994 or 1996" and concludes that all of petitioner's work was far from his personal residence.  We do not read this stipulation as broadly as respondent.  To be sure, petitioner worked near his personal residence from Oct. 20 through 23, 1996, and on Dec. 13, 1996.  Respondent also places undue weight on the fact that Crowley did not require that petitioner vacation at his personal residence, thus leaving petitioner free to vacation elsewhere.  The fact that Crowley did not mandate that petitioner stay at his personal residence during his vacation carries no weight as to whether he had a tax home for purposes of sec. 162(a).

travels and thus does not duplicate substantial, continuous living expenses for a permanent home maintained for some business reason." (Emphasis added.)). The value of lodging and meals that an employer furnishes to an employee is an item of income that must be included in the employee's gross income but for the application of an exclusionary provision such as section 119 (meals and lodging furnished for the convenience of the employer). We do not believe that a finding of a tax home for purposes of section 162(a) turns on whether an employee may exclude the value of employer-provided lodging and meals from his or her gross income. An employee who could not exclude the value of those items from gross income would incur an expense as to those items, to the extent that his or her personal income tax was attributable thereto, and that expense would mean that the employee was paying twice for overlapping lodging and/or meals.

Petitioner's work schedule also was generally fixed as to the number of days that he was required to work and allowed to vacation. Thus, unlike the taxpayer in Henderson v. Commissioner, 143 F.3d 497 (9th Cir. 1998), petitioner would not have avoided a duplication of living expenses during his vacation had he established his home at other than his personal residence. Petitioner received neither meals nor lodging from his employer while he was on vacation. Thus, were petitioner to have lived in other than his personal residence during that time, he would have

had to pay for those living quarters and his meals there as well as the cost of his personal residence and the meals which his family consumed at the personal residence. According to respondent, an employee such as petitioner can never have a tax home because he continually travels to different cities during his employment. We disagree that such continual travel, in and of itself, serves to disqualify a taxpayer from having a tax home for purposes of section 162(a). Regardless of where a taxpayer performs most of his or her work, the fact that he or she maintains financially a fixed personal residence generally means that he or she has a tax home someplace. See James v. United States, 308 F.2d 204 (9th Cir. 1962) (a taxpayer's permanent residence is his or her tax home if the taxpayer has no principal place of employment, is currently working away from that residence, and incurs substantial continuing living expenses at the residence); see also Leach v. Commissioner, 12 T.C. 20 (1949). Because petitioner incurred throughout the subject years substantial living expenses in maintaining his personal residence, his personal residence was his tax home for purposes of section 162(a). Cf. Ireland v. Commissioner, T.C. Memo. 1979-386.

Respondent's reliance on Rev. Rul. 73-529, 1973-2 C.B. 37, is misplaced. In addition to the fact that revenue rulings are not binding on this Court, see Sklar, Greenstein & Scheer, P.C.

v. Commissioner, 113 T.C. 135, 142 (1999); see also Christensen v. Harris County, 526 U.S. ___, ___, 120 S. Ct. 1655, 1662-1663 (2000) (the interpretation that an agency reaches without formal notice and comment rulemaking is entitled to "respect" only when it has the "power to persuade"), that ruling is unpersuasive as applied to the facts herein. The ruling applies ostensibly to outside salesmen, providing examples which distinguish (1) outside salesmen who are considered to be itinerants because they do not have a home or regular place of employment from (2) outside salesmen who may be regarded as having a home to be away from. Petitioner is neither an outside salesman nor an itinerant. He is a professional seaman who accepted employment away from his personal residence, most likely because he could earn his living at his trade more profitably than if he attempted to do so in the area of his personal residence. He accepted that employment with the understanding that he would travel at designated times to where the Falcon was docked and captain the Falcon for a fixed time. Our finding that petitioner has a tax home regardless of this revenue ruling is further solidified by noting that respondent does not contest petitioner's right to deduct as travel expenses the other reported travel expenses which he incurred with respect to his employment.

Nor do we agree with respondent that petitioner has not established that he paid incidental expenses during his

employment.  Petitioner testified credibly that he paid those expenses, and respondent's counsel never challenged that testimony, opting to rest his case without cross-examining petitioner or without introducing any evidence to attempt to impeach that testimony.  We disagree with respondent's assertion that petitioner must introduce into evidence actual receipts of his incidental expenditures in order to deduct them.  As we read Rev. Proc. 96-28, 1996-1 C.B. 686, and its progenitors, one of the primary purposes of those revenue procedures is to allow taxpayers to deduct a set amount of travel expenses incurred away from home in lieu of maintaining written records to substantiate the actual amount.  See also sec. 1.274-5T(j), Temporary Income Tax Regs., 50 Fed. Reg. 46032 (Nov. 6, 1985) ("the Commissioner may establish a method under which a taxpayer may elect to use a specified amount or amounts for meals while traveling in lieu of substantiating the actual cost of meals").  We note, however, that petitioner has introduced into evidence records which meet the time, place, and business purpose requirements of sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), as to his incidental expenses.  Those records show clearly:  (1) The dates of petitioner's departure for and return from each city that he visited while away from home (the time requirement), (2) the cities or points of travel (the place requirement), and (3) the business nexus between his employment

and his travel (the business purpose requirement). See id.; see also 41 C.F.R. sec. 301-7.2(a)(2) (1994 & 1996).

Nor do we agree with respondent that a taxpayer is precluded from deducting travel expenses under section 162(a)(2) if he or she does not pay for lodging or meal costs for his or her travel. The mere fact that a taxpayer is furnished with meals and lodging without charge while employed away from home does not necessarily mean that he or she will not incur other ordinary and necessary travel expenses. In fact, the Commissioner has recognized as much in the subject revenue procedures wherein he states that "the amount of ordinary and necessary business expenses of an employee for lodging, meal, and/or incidental expenses incurred while traveling away from home will be deemed substantiated * * * when * * * [the employer] provides a per diem allowance" to the employee equal to the applicable M&IE rate. E.g., Rev. Proc. 96-28, 1996-1 C.B. at 686. We also note that 41 C.F.R. sec. 301-7.12(a)(2) (1994 & 1996) sets forth explicit rules which reduce the M&IE rates when the Government furnishes meals to an employee without charge and clarifies that "The total amount of deductions made on partial days shall not cause the employee to receive less than the amount allocated for incidental expenses."

We turn to the applicable revenue procedures. Respondent focuses on the fact that those revenue procedures provide that an employee without a travel allowance may use the revenue

procedures to compute a deduction for "meals and incidental expenses". Respondent concludes from the quoted language that the revenue procedures apply only when both meals and incidental expenses are incurred, or when meals alone are incurred. We disagree with respondent's conclusion. We do not see how the language "meals and incidental expenses" could be construed to apply when only meals are incurred but not when only incidental expenses are incurred. We read the revenue procedures to apply to three distinct situations; i.e., (1) where a traveling employee pays only for meals, (2) where a traveling employee pays for both meals and incidental expenses, and (3) where a traveling employee pays only for incidental expenses.

We are mindful that the relevant provision of the revenue procedures is headed "Optional method for meals only deduction." E.g., sec. 4.03 of Rev. Proc. 96-28, 1996-1 C.B. 686. However, we do not believe that this heading is dispositive as to the breadth of the related text. That text, when read in the context of the related revenue procedure as a whole, clarifies that the provision was intended to apply to costs for both meals and incidental expenses. The revenue procedures allow a taxpayer to compute a deduction for business meals and incidental expenses in accordance with the rules of the travel regulations set forth in

41 C.F.R. chapter 301.[7]   See, e.g., Rev. Proc. 90-60, sec. 1, 1990-2 C.B. at 651 (an employee may use the revenue procedures to compute the "deductible costs of business meal and incidental expenses paid or incurred while traveling away from home"); see also id. sec. 6.01, 1990-2 C.B. at 655 ("the Federal M&IE rate described in section 3.02 for the locality of travel will be applied in the same manner as applied under the Federal Travel Regulations, 41 C.F.R. Part 301-7 (1990), except as provided in sections 6.02 through 6.04.").[8]   The travel regulations, in turn, provide a specific mechanism under which the applicable M&IE rates are reduced whenever the employer provides the traveler with meals at no charge.  See, e.g., 41 C.F.R. sec. 301-7.12(a)(2) (1994 & 1996).  We conclude that an employee is not precluded by the revenue procedures from using the procedures when he or she pays only for incidental expenses, just as an employee is not precluded by the revenue procedures from using the procedures when he or she pays only for meals.

---

[7] Respondent makes no reference to this provision or to the fact that the revenue procedures apply the M&IE rates in accordance with the rules of those regulations.

[8] None of these exceptions are applicable herein; e.g., Rev. Proc. 90-60, sec. 6.03, 1990-2 C.B. 651, 655, does not apply because petitioner was never responsible for the cost of his meals.  Moreover, the fact that 41 C.F.R. sec. 301-7.12(a)(2) (1994 & 1996) provides explicitly that the M&IE rate must be reduced when the Government provides an employee with meals at no charge counters petitioner's argument that we should not reduce the M&IE rates to take into account his employer-provided meals.

Given our conclusion that petitioner may use the revenue procedures to ascertain the amount of his deductible incidental expenses, petitioner asks the Court to allow him to use the full M&IE rates to ascertain those deductions. We decline to do so. We do not read the revenue procedures to allow a taxpayer to use the full M&IE rates when he or she incurs only incidental expenses. The M&IE rates represent the amount that the Government pays daily to its traveling employees to compensate them for four items of traveling expense; namely, breakfast, lunch, dinner, and incidental expenses. See 41 C.F.R. sec. 301-7.2(a)(2) (1994 & 1996). Specific amounts are apportioned under the travel regulations to each of these four items, depending on the point of travel.[9] The portion of the M&IE rates that is attributable to incidental expenses incurred in all of the CONUS

---

[9] The definition of the term "incidental expenses" under the travel regulations is slightly broader than the definition of the same term under the applicable revenue procedures. Compare 41 C.F.R. sec. 301-7.1(c)(3) (1994 & 1996), with Rev. Proc. 90-60, sec. 3.02(4), 1990-2 C.B. at 652. Section 301-7.1(c)(3) of 41 C.F.R. (1994 & 1996) provides:

> (3) Incidental expenses covered by per diem. (i) Fees and tips to porters, baggage carriers, bellhops, hotel maids, stewards, and stewardesses and others on vessels, and hotel servants in foreign countries.
>
> (ii) Laundry and cleaning and pressing of clothing.
>
> (iii) Transportation between places of lodging or business and places where meals are taken * * *.

locations is $2. See 41 C.F.R. sec. 301-7.12(a)(2)(i) (1994 &
1996). The portion of the M&IE rates that is attributable to
incidental expenses incurred in any other location varies from $1
to $53, depending on the M&IE rate for that location. See 41
C.F.R. ch. 301, app. B (1994 & 1996). We believe that
petitioner's deductions for his incidental expenses are limited
under the travel regulations, which are incorporated by reference
into the revenue procedures, to the incidental expense portion of
the applicable M&IE rate.[10] See 41 C.F.R. sec. 301-7.12(a)(2)
(1994 & 1996), which provides that the M&IE rate must be reduced
"When all or part of the meals are furnished at no cost or at a
nominal cost to the employee by the Federal Government".

We note that taxpayers such as petitioner need not limit
their deductions to the incidental expense portion of the M&IE
rates. Specifically, taxpayers, to the extent that the amounts
set forth in the revenue procedures fail to reflect the actual
cost of their incidental expenditures, are entitled to a
deduction for their actual expenses. In such a situation,
however, taxpayers must be prepared to meet all the
substantiation requirements, including, especially, written

---

[10] Petitioner argues that his deductions at these rates
should not be subject to the 50-percent reduction for meals and
entertainment. We agree. The Rule 155 computation should
reflect a deduction of the entire amounts of the M&IE rates which
are attributable to incidental expenses.

documentation as to the amounts of those costs.  But see sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985) (written documentation generally not required for any expenditure less than $25); Notice 95-50, 1995-2 C.B. 333 (notifies taxpayers that sec. 1.274-5T(c)(2)(iii)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46019 (Nov. 6, 1985), will be amended to provide that no receipts are required for expenditures less than $75 which are incurred after Oct. 1, 1995).[11]  Accord 41 C.F.R. sec. 301-11.25 (1998) (a traveler must provide "a receipt for any authorized expense incurred costing over $75, or a reason acceptable to your agency explaining why you are unable to provide the necessary receipt").

We have considered all arguments in this case.  Those arguments not discussed herein are without merit or irrelevant.  To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[11] The record does not allow us to apply either of these provisions.  In particular, we note that petitioner has not specified the dollar amounts which he actually paid for any of his incidental expenses.