T.C. Summary Opinion 2011-109

UNITED STATES TAX COURT

EDWARD K. AND JERI L. GLOVER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17042-09S.              Filed September 14, 2011.

<u>Ellin Vicki Palmer</u>, for petitioners.

<u>Halvor R. Melom</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at

issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes of $1,019 for 2004 and $2,011.30 for 2005.

The issue for decision is the location of Edward K. Glover's (petitioner's) tax home with respect to certain unreimbursed employee expenses for 2004 and 2005.[1]

This case was submitted on a stipulation of facts and a supplemental stipulation of facts. The stipulated facts are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by reference. Petitioners resided in Missouri when the petition was filed.

## Background

During the years at issue petitioners resided in Jackson, Missouri. Jeri L. Glover was employed by Southeast Missouri Hospital Association in Cape Girardeau. Petitioner was employed by Reinauer Transportation Cos., L.L.C. (Reinauer), which is headquartered in Staten Island, New York, and maintains an office

---

[1]Respondent determined that petitioners had unreported interest income of $14 for 2005. Petitioners failed to address the issue in either their pretrial memorandum or the stipulation of facts and supplemental stipulation of facts. The Court considers petitioners to have conceded the issue. See Bradley v. Commissioner, 100 T.C. 367, 370 (1993); Sundstrand Corp. v. Commissioner, 96 T.C. 226, 344 (1991); Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988).

in East Boston, Massachusetts. Petitioner was employed by Reinauer as a merchant mariner aboard certain tugboats and barges in 2004 and 2005. Reinauer is in the business of transporting petroleum and chemical products by tug and barge along the eastern seaboard of North America. Petitioner generally travels to the New York City area to pick up tugboat and barge combinations that are used to load and deliver petroleum or chemical products, or both. Petitioner's pay begins when his vessel leaves the local dock. The collective bargaining agreement (CBA) between Reinauer and the union to which petitioner belonged for the years at issue states that Reinauer will use its employees to perform work in the area of "The Port of New York and vicinity" and "Any regular coastwise run having as one of its terminal points a point in or north of Norfolk, Virginia."

In addition, the CBA provides for reimbursement of employee travel expenses if: (a) The employee is required to go from one vessel to another; (b) not more than once a month the employee is given time off and must travel between his vessel and a common carrier; or (c) not more than once a month the employee travels round trip between his vessel and its home port or, if less expensive, another city.

In 2004 petitioner worked on the east coast of the United States from Maine through Virginia, and in 2005 he worked on the east coast from New Hampshire through Florida. Petitioner took 11 voyages in 2004 of which 9 originated in or around New York City. He disembarked from those trips five times in the New York City area. In 2005 petitioner voyaged 12 times, embarking from the New York City area 9 times and disembarking there 9 times.

Petitioner paid various expenses to travel between his residence and the terminals from which he boarded and disembarked from the tugboats and barges on which he worked. Petitioner paid: (a) Vehicle expenses of $1,999 for 2005; (b) miscellaneous parking fees, tolls, and transportation expenses of $4,499 in 2004 and $1,482 in 2005; and (c) travel expenses while away from home overnight of $2,786 for 2004[2] and $3,702 for 2005.

The parties stipulated various receipts as substantiation for travel expenses and a summary table of the dates and locations of petitioner's voyages in the years at issue. In addition to the summary stipulated by the parties, they stipulated copies of petitioner's "U.S. Sea Time Employee Schedule" (employee schedule) that lists for petitioner the vessel and date for each of his voyages in both years. The

_____

[2]Petitioners presented as substantiation a receipt from the Baymont Inns and Suites in Lexington, Kentucky, for a stay from June 28 to 29, 2004, but do not explain how it relates to petitioner's employment.

parties also stipulated copies of port listings for each of the vessels on which he served, showing the loading terminal, loading date, unloading terminal, and unloading date for each vessel.

An examination of petitioner's documentation raises some questions that are not answered by other evidence in the record. Petitioner presented receipts that show the purchase of a Southwest Airlines ticket for a 5:10 p.m. flight from St. Louis, Missouri, to Orlando, Florida, on September 27, 2005, and an American Airlines ticket for a flight from St. Louis, Missouri, to New York, New York, at 6:08 p.m. on the same date. The conflicting receipts are unexplained, although other stipulated evidence indicates that petitioner went to Orlando for a Port Canaveral embarkation on September 28, 2005. Petitioner presented an Airtran Airways receipt for a 8 p.m. flight from New York to Newport News, Virginia, on June 29, 2004, while other stipulated evidence indicates that he arrived in New York on that date in preparation for an embarkation on June 30, 2004.

Petitioner provided copies of ticket stubs showing that on October 13, 2004, at 4:45 p.m. he left Norfolk, Virginia, on Southwest Airlines, flew to Baltimore-Washington International Airport, then to Chicago-Midway Airport, and finally to St. Louis International Airport. Petitioner also presented a copy of a receipt for an American Airlines flight leaving New York at noon and arriving in St. Louis at 1:47 p.m., on the same date, October

13, 2004. The employee schedule shows vessel RTC 120's having a voyage beginning on October 6, 2004, and ending on October 12, 2004. The 2004 port listing shows vessel RTC 120 loading at a terminal in New Jersey on October 7 and unloading in Connecticut on October 9, 2004, loading in Virginia on October 13 and unloading in Massachusetts on October 20, 2004. The summary table indicates that petitioner disembarked in Manhattan on October 13, 2004, and arrived in Jackson, Missouri, on October 14, 2004. The record does not explain why petitioner's documents show him leaving Virginia for St. Louis and leaving Manhattan for St. Louis on October 13; the summary shows him disembarking in Manhattan on the 13th, and the port listing shows his vessel loading in Virginia on the 13th.

In any event, almost all of petitioner's substantiated flights were between St. Louis International Airport and La Guardia Airport in New York City or Newark Liberty International Airport.

## Discussion

### Burden of Proof

The Commissioner's determinations are presumed correct, and generally taxpayers bear the burden of proving otherwise. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). Petitioners

argue that the provisions of section 7491 apply and that the burden of proof is on respondent.  Because petitioners have not met all the requirements of section 7491(a)(2), the burden of proof does not shift to respondent.

Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to the deductions claimed.  Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Section 162 Expenses

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  An expense is considered ordinary if commonly or frequently incurred in the trade or business of the taxpayer.  Deputy v. du Pont, 308 U.S. 488, 495-496 (1940).  An expense is necessary if it is appropriate and helpful in carrying on a taxpayer's trade or business.  Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Welch v. Helvering, supra at 113.  Services performed by an employee constitute a trade or business for this purpose.  O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988).

Section 162(a)(2) allows a taxpayer to deduct traveling expenses, including amounts expended for meals and lodging, if such expenses are:  (1) Ordinary and necessary, (2) incurred while away from home, and (3) incurred in the pursuit of a trade

or business.  Commissioner v. Flowers, 326 U.S. 465, 470 (1946). "The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors." Id. at 474.

This Court has generally defined the word "home" (or tax home) as used in section 162(a)(2) to mean the vicinity of a taxpayer's principal place of business.  Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Daly v. Commissioner, 72 T.C. 190 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968).  Under this definition, commuting expenses are not deductible and are considered personal expenses.  Anderson v. Commissioner, 60 T.C. 834, 835 (1973); see sec. 262.

On the other hand, if a taxpayer accepts temporary employment outside the vicinity of his principal place of residence, his travel expenses are generally deductible because it would be unreasonable for him to move his residence for temporary employment.  Ireland v. Commissioner, T.C. Memo. 1979-386 (citing Tucker v. Commissioner, 55 T.C. 783, 786 (1971)).

If a taxpayer does not have a principal place of business, his personal residence will be considered his tax home.  Johnson v. Commissioner, 115 T.C. 210, 221 (2000) (citing Rambo v. Commissioner, 69 T.C. 920 (1978), Dean v. Commissioner, 54 T.C. 663 (1970), and Leach v. Commissioner, 12 T.C. 20 (1949)).  A

taxpayer must have a tax home from which to be away to be entitled to a deduction under section 162(a)(2). Henderson v. Commissioner, T.C. Memo. 1995-559, affd. 143 F.3d 497 (9th Cir. 1998). "Married couples that both work and file a joint tax return may have separate tax homes." Allen v. Commissioner, T.C. Memo. 2009-102; see Hammond v. Commissioner, 20 T.C. 285, 287-288 (1953), affd. 213 F.2d 43 (5th Cir. 1954); Chwalow v. Commissioner, T.C. Memo. 1971-185, affd. 470 F.2d 475, 478 (3d Cir. 1972).

In order to decide what expenses petitioners are entitled to deduct, the Court must first decide the location of petitioner's tax home. The "determination of a taxpayer's tax home is a question of fact to be decided on the entire record." Nicholls v. Commissioner, T.C. Memo. 1995-291 (citing Coombs v. Commissioner, 608 F.2d 1269, 1274 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976)).

Petitioners argue that petitioner's employment is in the "transportation industry" and on that basis alone he is entitled to treat his personal residence as his tax home. Petitioners rely heavily on the cases of Johnson v. Commissioner, supra at 221, and Westling v. Commissioner, T.C. Memo. 2000-289. In Johnson the taxpayer husband was a merchant seaman who lived in Freeland, Washington, and was the captain of a vessel that sailed worldwide. The primary office of the taxpayer husband's employer

was in Jacksonville, Florida.  Johnson v. Commissioner, supra at 211.  The taxpayer husband and his crew flew to and from whatever port around the world in which the vessel was docked to begin and end each work shift.  Id. at 211-212.  The Court found that the taxpayer husband had no principal place of business and that his personal residence was his tax home.  Id. at 221.  To support its finding the Court noted that the taxpayer husband's family did not travel with him and that there was no reason to second guess the taxpayer husband's decision to maintain his principal residence in Washington State instead of Florida or one of the many cities to which he traveled.  Id. at 222.

In Westling v. Commissioner, supra, the Court discussed not the taxpayer's tax home but whether he was entitled to use the Federal per diem rates to determine his incidental expenses for his employment as a merchant seaman.  The primary office of the taxpayer's employer was in Juneau, Alaska, and the taxpayer piloted a tugboat to various ports in and around southeast Alaska.  Id.  The taxpayer also began and ended his shifts on the tugboat at several different ports.  Id.  Although there was no discussion of the taxpayer's tax home, the Court found that the taxpayer was entitled to deduct his incidental expenses using the Federal per diem rate because the taxpayer's meals and lodging were supplied by his employer at no charge when he was working.  Id.

Respondent takes the position that petitioner's tax home was in the vicinity of New York City and that he maintained his home in Jackson for personal reasons. The Court agrees with respondent.

Petitioner's employment situation is factually different from those of the taxpayers in <u>Johnson</u> and <u>Westling</u>. The primary office of petitioner's employer was in Staten Island, a borough of New York City. Almost all of petitioner's embarkations were from the New York City area, and most of his disembarkations were there, too. In addition, the CBA provided for reimbursement of employee travel expenses if petitioner had to go from one vessel to another, was given time off, or had to travel between his vessel and its home port or, if less expensive, another city.[3]

Petitioner's situation is more analogous to that of the taxpayers in <u>Swicegood v. Commissioner</u>, T.C. Memo. 1989-467, and in <u>Dady v. Commissioner</u>, T.C. Memo. 1981-440, affd. without published opinion 696 F.2d 1006 (11th Cir. 1983). In <u>Swicegood</u>, the taxpayer was a pilot for an international airline that was headquartered in New York City. He maintained residences in Hollywood, Florida, where his wife and daughter lived, and in Freeport, Bahamas, which is 84 nautical miles from Hollywood.

---

[3]Petitioners offered no evidence of the home ports of the four vessels on which petitioner worked in the subject years, and the Court infers from the record that the home port of the vessels was in the New York City area.

Many but not all of the taxpayer's flights originated or terminated in New York City. The taxpayer could have flown on his own to the beginning or terminating airport of a particular flight or he could have relied on his airline to provide transportation between New York City and the other airport from which he would depart. If he chose the latter, he would be responsible for transportation between his home and New York City. He argued, as petitioner does here, that he did not have a regular place of employment and that therefore his residence was his tax home. The Court pointed out that New York City was his "base station" as well as being the headquarters of his employer. His employer took responsibility to get him between New York City and any other airport where his flight would begin or end. Upon that basis and the taxpayer's "significant work ties", 16 of his 20 flights began and/or ended in New York City, the Court found that his principal place of business was New York City.

In Dady, the taxpayer was a tugboat captain who resided in Lauderhill, Florida. While the tugboat's home port was in the New York City area, the taxpayer might have reported to or been relieved from duty at other East Coast locations or in Puerto Rico. The taxpayer flew between his residence and the various ports. His employer was required by union contract to pay only half the expense of one round-trip ticket a month that he "actually incurred" in travel originating in New York. The

taxpayer offered no evidence of where he had boarded or disembarked from the boat for a crew change or whether he had boarded or disembarked more frequently in New York than somewhere else. The Court held that the taxpayer had not shown that his tax home was other than New York. Unlike the taxpayer's situation in Dady, the record here shows that almost all of petitioner's embarkations were from the New York City area and most of his disembarkations were there as well.

On the basis of the stipulated facts and the inferences reasonably to be drawn from them, the Court finds that petitioner's tax home in 2004 and 2005 was in the New York City area. Petitioners are not entitled to deduct petitioner's unreimbursed employee expenses.

### Conclusion

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that the arguments are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.