T.C. Memo. 2008-44

UNITED STATES TAX COURT

RAYMOND J. AND MARIA V. ZBYLUT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15269-06.                    Filed February 27, 2008.

<u>Ellin Vicki Palmer</u>, for petitioners.

<u>Valerie L. Makarewicz</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $2,293 and an addition to tax of $573.25 for failure to file a timely return pursuant to section 6651(a)(1) with regard to petitioners' Federal income tax liability for 2002.  After concessions, the issues to be decided are:

(1) Whether for the years in issue petitioners may deduct at Federal per diem rates meal expenses that Raymond J. Zbylut (petitioner) did not pay or incur;

(2) whether petitioners are entitled to deductions for expenses related to petitioner's travel to union halls in 2002; and

(3) whether petitioners are entitled to deductions claimed for other job-related expenses in 2002.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Nebraska at the time they filed their petition.

Petitioner was employed as a merchant sailor at various times in 2002 by American Ship Management, L.L.C. (American Ship), and by Matson Navigation Co. (Matson Navigation). During that year, American Ship provided meals and lodging without cost to petitioner whenever he was on active status and assigned to a vessel for that company. Petitioner worked for American Ship aboard a container vessel called the President Wilson for

approximately 112 consecutive days between July and November 2002.

Petitioner incurred expenses traveling to union halls in San Francisco, California, and Honolulu, Hawaii, in order to seek temporary employment in 2002.  Petitioner traveled to and remained at the union hall in San Francisco in order to seek employment from March 17 through 27, 2002.  Petitioner did not obtain a job during his March 2002 trip to San Francisco. Petitioner traveled to the union hall in Honolulu in order to seek employment on June 15, 2002.  He remained in Honolulu until at least June 28, 2002, during which time he was able to secure several temporary jobs.  On the following dates in 2002, petitioner served as a port relief engineer in Honolulu for Matson Navigation, which provided petitioner with meals when he was serving aboard one of its vessels:

| Vessel | Dates |
|--------|-------|
| SS Chief Gadao | June 19-June 21 |
| SS Maui | June 23 |
| SS Manulani | June 24-June 28 |

Petitioner incurred lodging expenses on all but the last 5 days of his trip to Honolulu, during which petitioner was employed exclusively on the SS Manulani.  Petitioner incurred necessary meal expenses on the days he was in Honolulu looking for work but not employed on a Matson Navigation vessel.

Petitioner did not receive a per diem cash allowance or reimbursement for lodging, meals, or incidental expenses from American Ship or Matson Navigation in 2002.  He was not a permanent or indefinite employee of either employer or of any other company during 2002.  He served only in temporary positions on various vessels that year and then returned to his home in Nebraska for vacation and during periods of unemployment.

In addition to wages from American Ship and Matson Navigation, petitioner received unemployment compensation in 2002 from the New York State Department of Labor-Unemployment Insurance.

Petitioners filed their Form 1040, U.S. Individual Income Tax Return, for 2002 over 9 months late on January 28, 2004. Petitioners did not request an extension of time to file their 2002 return.

Under Job Expenses and Most Other Miscellaneous Deductions on their Schedule A, Itemized Deductions, for 2002, petitioners claimed the following deductions:

| | |
|---|---|
| Unreimbursed employee expenses | $13,067 |
| Other expenses | 3,488 |

Petitioners attached an extensive compilation of documents entitled "Sailor Travel Statement" to substantiate their claim for unreimbursed employee expenses.  The Sailor Travel Statement included, among other things, the "Supplemental Sailor Travel Schedule" reproduced below, authorities upon which petitioners

rely in support of their tax position, and documentation showing the respective locations of petitioner and the President Wilson on particular dates in 2002.  The Supplemental Sailor Travel Schedule, with original emphases, that petitioners attached to their 2002 return is reproduced in part below:

> Taxpayer is a Merchant Sailor assigned to work aboard a Cargo Ship traveling between ports located around the entire Pacific Ocean and therefore qualifies per attached **Rev Proc 2001-47's "Transportation Industry Employees"** and attached **MARIN JOHNSON TAX COURT DECISION & IRS Publication 463 (Chapter 1 Page 5)** to compute his **DEEMED SUBSTANTIATED** Out-of-Town Travel Costs by using attached Pub 1542's Foreign OCONUS Rates and Domestic CONUS Rates for **EACH CITY** as follows:
>
> | | | |
> |---|---|---:|
> | 27 Days x $119 | Yokohama, Japan | = 3,213. |
> | 23 Days x $76 | Guam, Island of | = 1,748. |
> | 15 Days x $82 | Qingdao <Beijing>, China | = 1,230. |
> | 10 Days x $87 | Pusan, South Korea | = 870. |
> | 14 Days x $50 | San Pedro <L.A.>, California | = 700. |
> | 6 Days x $113 | Nagoya, Japan | = 678. |
> | 7 Days x $84 | Naha <Okinawa>, Japan | = 588. |
> | 6 Days x $46 | San Pedro <L.A.>, California | = 276. |
> | 4 Days x $38 | Oakland, California | = 152. |
>
> Total Sailor Travel Costs Allowed per OCONUS & CONUS Rates   9,455.
>
> Taxpayer also took a **Sailor Continuing Education Program.**  This additional Rating is deductible since he already has other SAILOR ratings and this course does NOT qualify him for a new occupation. **Note the Union paid the tuition in full.  This is related Educational Travel Expenses ONLY.**
>
> | | | |
> |---|---|---:|
> | 35 Days x  $42 | Easton <St. Michaels>, Maryland | = 1,470. |
> | | Airfare & Other Education Related Costs | = 1,272. |
> | | **Less Union Education Reimbursement Per 1099** | **<2,712>** |
>
> As a **MERCHANT SAILOR**, taxpayer was _**forced**_ by his attached Union Letter to personally show up at his Union Hall to look for his next work assignment.  He was **NOT ALLOWED** to simply phone his Union Hall to see what new jobs were currently available.  **Per attached IRS Publication 17**, auto mileage and possibly other travel-related costs back and forth to his Union Hall Looking [sic] for work are _FULLY DEDUCTIBLE_ as follows:
>
> | | | |
> |---|---|---:|
> | 16 Days x  $72 | Honolulu <Oahu>, Hawaii | = 1,152. |
> | 12 Days x $205 | San Francisco, California | = 2,460. |
>
> Total U.S. Tax Court
> & Other Sailor Travel Expenses Allowed           13,067.

In another statement attached to their 2002 return, petitioners listed their other expenses as follows:

```
Sailor required medical expenses    $1,227
Sailor required supplies               655
Sailor uniforms/cleaning               692
Sailor union dues                      914
                                    ======
                                     3,488
```

OPINION

Section 162 permits taxpayers to deduct all ordinary and necessary business expenses paid or incurred during the taxable year and specifically includes traveling expenses (including amounts expended for meals and lodging other than amounts that are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business.  Sec. 162(a)(2). Section 274(d) generally disallows any deduction under section 162 for, among other things, "any traveling expense (including meals and lodging while away from home)", unless the taxpayer complies with stringent substantiation requirements as to the amount, time and place, and business purpose of the expense. Sec. 274(d)(1).  Section 274(d) authorizes the Secretary to provide by regulations that some or all of these substantiation requirements "shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations."

Under the applicable section 274 regulations, the Commissioner is authorized to prescribe rules under which optional methods of computing expenses, including per diem

allowances for ordinary and necessary expenses for traveling away from home, may be regarded as satisfying the substantiation requirements of section 274(d).  Sec. 1.274-5(j), Income Tax Regs.  Under this authority, the Commissioner issued Rev. Proc. 2001-47, 2001-2 C.B. 332 (applicable to petitioner's travel January through September 2002), and Rev. Proc. 2002-63, 2002-2 C.B. 691 (applicable to petitioner's travel October through December 2002) (collectively, the applicable revenue procedures). Under the applicable revenue procedures, taxpayers may elect to use, in lieu of substantiating actual expenses, certain authorized methods for deemed substantiation of employee lodging, meal, and incidental expenses incurred while traveling away from home.  Rev. Proc. 2002-63, sec. 1, 2002-2 C.B. at 691, provides the following introduction:

SECTION 1.  PURPOSE

This revenue procedure updates Rev. Proc. 2001-47, 2001-2 C.B. 332, by providing rules under which the amount of ordinary and necessary business expenses of an employee for lodging, meal, and incidental expenses or for meal and incidental expenses incurred while traveling away from home will be deemed substantiated under section 1.274-5 of the Income Tax Regulations when a payor (the employer, its agent, or a third party) provides a per diem allowance under a reimbursement or other expense allowance arrangement to pay for the expenses.  In addition, this revenue procedure provides an optional method for employees and self-employed individuals who pay or incur meal costs to use in computing the deductible costs of business meal and incidental expenses paid or incurred while traveling away from home.  This revenue procedure also provides an optional method for use in computing the deductible costs of incidental expenses paid or

incurred while traveling away from home by employees and self-employed individuals who do not pay or incur meal costs and who are not reimbursed for the incidental expenses. Use of a method described in this revenue procedure is not mandatory, and a taxpayer may use actual allowable expenses if the taxpayer maintains adequate records or other sufficient evidence for proper substantiation. * * *

Rev. Proc. 2001-47, sec. 1, 2001-2 C.B. at 332, is almost identical to the passage quoted above, but the following sentence is omitted:

This revenue procedure also provides an optional method for use in computing the deductible costs of incidental expenses paid or incurred while traveling away from home by employees and self-employed individuals who do not pay or incur meal costs and who are not reimbursed for the incidental expenses. * * *

Rev. Proc. 2002-63, sec. 4.05, 2002-2 C.B. at 694, expressly provides that taxpayers who do not pay or incur meal expenses when traveling away from home may use, in lieu of providing actual receipts to substantiate incidental expenses, an established rate of $2 per day. Rev. Proc. 2001-47, sec. 4, 2001-2 C.B. at 333-334, which provides specific rules for the per diem substantiation method, does not contain a similar provision. However, we have held previously that the incidental portion of the per diem rates for meals and incidental expenses (M&IE) may be used as deemed substantiation of incidental expenses when meals are provided by a taxpayer's employer. Johnson v. Commissioner, 115 T.C. 210, 210-211 (2000).

Rev. Proc. 2001-47, sec. 6.01, 2001-2 C.B. at 337, and Rev. Proc. 2002-63, sec. 6.01, 2002-2 C.B. at 698, each provide that the Federal M&IE rate will be applied, with stated exceptions, in the same manner as applied under the Federal Travel Regulations, 41 C.F.R. sec. 301-11, in effect at the time each respective revenue procedure was released.

Deductions for Meals and Incidental Expenses

American Ship furnished petitioner with lodging and meals without charge while he worked on the President Wilson in 2002. Matson Navigation provided meals to petitioner without charge while he worked as a relief port engineer on its vessels docked in Honolulu for several days in 2002. Although petitioner did not pay for his meals while at sea or while docked in ports, petitioners deducted the full M&IE rate for each day that petitioner worked aboard a vessel in 2002.

Petitioners argue that the applicable revenue procedures, which are cited above, in conjunction with the Federal Travel Regulations, permit them to deduct the full applicable M&IE rate for work-related travel even though all of petitioner's meals were provided to him free of charge by his employers. Section 301-11.17 of the Federal Travel Regulations provides that a meal provided by a common carrier or a complimentary meal provided by a hotel or motel does not affect a taxpayer's otherwise allowable per diem expense deduction for meals. 41 C.F.R. sec. 301-11.17

(2000); 41 C.F.R. sec. 301-11.17 (2002). None of the vessels on which petitioner worked were common carriers, and he did not receive meals from a hotel or motel. Additionally, the Federal Travel Regulations require that a Federal employee's M&IE rate be adjusted for meals provided by the Government by deducting appropriate amounts for each meal provided. Johnson v. Commissioner, supra at 227-228; Federal Travel Regulations, 41 C.F.R. sec. 301-11.18 (2000); 41 C.F.R. sec. 301-11.18 (2002). Because, as petitioners acknowledge, the revenue procedures regarding M&IE rate deductions for non-Government employees are to be applied according to the Federal Travel Regulations for Federal employees, the regulations require that petitioner decrease the M&IE rate deduction otherwise allowable to account for meals provided by petitioner's employers.

Petitioners also argue that this issue is novel to the Court. We disagree. In Johnson v. Commissioner, supra, the taxpayer, also a merchant seaman, deducted the full Federal M&IE rates on his return, even though all of his meals were provided to him free of charge by his employer. We held that, because the taxpayer's actual expenses consisted solely of incidental expenses, his use of the M&IE rates to calculate his deductions for business expenses due to travel away from home was limited to the incidental portion of those rates. Id. at 210-211. The taxpayer in that case established that he had incurred incidental

expenses during his travel away from home and was allowed to use the incidental portion of the M&IE rates to substantiate those expenses in lieu of providing actual receipts.  The purpose of the Federal per diem rates is to ease the burden of substantiating travel expenses away from home, not to eliminate the requirement that those expenses be incurred before they can be claimed as deductions from income.  Although petitioners contend that the Court has not yet addressed this issue, we explicitly stated in Johnson v. Commissioner, supra at 227:  "We do not read the revenue procedures to allow a taxpayer to use the full M&IE rates when he or she incurs only incidental expenses."

Respondent concedes that petitioners are entitled to a miscellaneous itemized incidental expenses deduction for 2002 equal to the per diem rate then applicable for each day petitioner was traveling away from home for business.  Respondent performed those calculations according to methods established by relevant revenue procedures.

Petitioners may, as respondent has conceded, deduct the incidental portion of the M&IE per diem rate for days that petitioner worked away from home for which they have substantiated the time, place, and business purpose of petitioner's travel.  Johnson v. Commissioner, supra at 225; see also Westling v. Commissioner, T.C. Memo. 2000-289.  In accordance with the applicable revenue procedures, respondent

calculated petitioner's deemed substantiated incidental expenses using the incidental expense portion of applicable M&IE rates based on petitioner's substantiated work locations for January through September 2002 and a fixed per diem rate of $2 for incidental expenses for October through December 2002. We sustain respondent's calculations regarding petitioner's deemed substantiated incidental expenses for 2002.

Travel to Union Halls

Section 162 generally allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business", including travel expenses while the taxpayer is "away from home in the pursuit of a trade or business". Sec. 162(a)(2). A taxpayer's "home", for purposes of section 162(a)(2), is generally considered as the vicinity of his principal place of employment rather than his personal residence. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Daly v. Commissioner, 72 T.C. 190 (1979), affd. 662 F.2d 253 (4th Cir. 1981). Accordingly, expenses incurred in commuting from a taxpayer's personal residence to a taxpayer's business or place of employment are generally nondeductible personal expenses. Gilberg v. Commissioner, 55 T.C. 611, 616-617 (1971); sec. 1.262-1(b)(5), Income Tax Regs. Where a taxpayer does not have a permanent place of business, but rather is employed temporarily by various employers at different

locations, we generally deem the situs of the taxpayer's permanent residence to be his or her tax home, and the taxpayer's traveling expenses from his residence to those temporary places of employment may be deductible. Johnson v. Commissioner, 115 T.C. at 221, 223; Dean v. Commissioner, 54 T.C. 663, 667-668 (1970); see Case v. Commissioner, T.C. Memo. 1985-530 (holding that taxpayer, a merchant sailor who incurred expenses traveling to a union hall in order to seek employment, could deduct traveling expenses related to his business affairs at the union hall because he was not employed by the union hall, his employment with each employer that he met through the union hall was temporary, and thus his expenses were not related to commuting).

Petitioner testified at trial that he took trips to San Francisco and Honolulu to seek work in 2002 and that obtaining a job in his field required being present physically at union halls when job opportunities were announced. Petitioner incurred expenses traveling to union halls in San Francisco and Honolulu in order to seek temporary employment. He was not a permanent or indefinite employee of American Ship, Matson Navigation, or any other company. He served only in temporary positions on various vessels and then returned to his home in Nebraska for vacations and during periods of unemployment.

Petitioners deducted on their 2002 return as unreimbursed employee expenses the following amounts for "auto mileage and possibly other travel-related costs back and forth to his Union Hall looking for work":

```
16 Days x  $72 Honolulu <Oahu>, Hawaii      = 1,152.
12 Days x $205 San Francisco, California    = 2,460.
```

Although petitioners' statement attached to their return attributes the deductions to auto mileage and other travel-related expenses, the rate petitioners used to calculate the expenses for Honolulu was the applicable M&IE rate for June 2002. The rate they used to calculate expenses for San Francisco was the applicable maximum per diem rate, which includes standard deemed substantiated expense allowances for lodging, meals, and incidental expenses. Respondent argues that petitioners are not entitled to the expense deductions claimed for petitioner's travels to San Francisco and Honolulu for several reasons.

In respondent's opening brief, respondent argues that Nebraska was petitioner's personal residence and advances the argument that expenses for travel to San Francisco and Honolulu were nondeductible commuting expenses to and from his places of work. Respondent argues that petitioners should not be allowed deductions for these commuting expenses because they were free to choose the location of their personal residence and chose to live far from petitioner's various places of work. Respondent's implicit argument is that petitioner's union halls, rather than

his personal residence in Nebraska, should be considered petitioner's tax home. However, as we explained in Johnson v. Commissioner, supra, because petitioner was employed by various employers in various locations, he had no principal place of business, and his personal residence is his tax home. See Johnson v. Commissioner, supra at 221-224. Thus, petitioner's travel between his personal residence and his union halls and various places of employment is business-related travel away from home.

In respondent's reply brief, respondent argues that, because petitioner received unemployment compensation from the State of New York and did not testify explicitly that he resided in Nebraska during 2002, petitioners have not established that Nebraska was their permanent residence and tax home. Such an argument is inconsistent with arguments in respondent's opening brief that assume that Nebraska was petitioner's home and permanent residence. Respondent never questioned petitioner at trial about where he resided in 2002 or about his receipt of unemployment compensation from the State of New York. The parties stipulated that petitioners resided in Nebraska at the time they filed their petition. Petitioner's permanent residence was not an issue presented before or during trial, and the argument that Nebraska was not petitioner's permanent residence was first made in respondent's reply brief. Until respondent's

reply brief, neither we nor petitioners were aware that respondent did not consider Nebraska petitioner's permanent residence. Because their residence was not an issue presented until respondent's reply brief, we are not persuaded by respondent's argument that, because they did not explicitly establish that Nebraska was their permanent residence and tax home at trial, petitioners may not treat their personal residence as their tax home. We find that petitioners did have a permanent residence and tax home for 2002 in Nebraska, where petitioners maintained their personal residence, and we hold that petitioner's traveling and living expenses related to trips to union halls in order to seek temporary employment are not commuting expenses but may be deductible expenses for business-related travel away from home.

Respondent also argues that petitioner's trips to San Francisco and Honolulu do not constitute ordinary and necessary business trips and thus are not deductible under section 162 because petitioners have not shown that petitioner's employers required petitioner to stop at the union halls. Petitioner testified credibly that he was notified of job opportunities only if he was physically present at a union hall, where potential employers announced their current needs. Petitioners have adequately established that petitioner's trips to union halls in 2002 were ordinary and necessary business expenses.

Respondent also argues that petitioners have failed to substantiate petitioner's expenses related to his trips to union halls in 2002. Petitioners claimed deductions at per diem rates for 16 days in Honolulu and 12 days in San Francisco. Although the per diem rates serve as an alternative method of substantiating the amount of expenses, petitioners must still substantiate the time, place, and business purpose of the underlying trip to deduct the per diem rates as ordinary and necessary business expenses. Sec. 274(d)(1); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Petitioner testified that the expenses related to his trips to the union halls to seek employment are accurately represented by credit card statements that petitioners presented as evidence at trial. The credit card statements, which include an array of expenditures including personal expenses, show that petitioner was present in San Francisco approximately 11 days in March and incurred expenses there for lodging and meals. Petitioner asserts, and we believe, that he traveled to the San Francisco area union hall in March 2002 in search of a job, but it appears that he was unable to secure a job at that time. Petitioner incurred ordinary and necessary business expenses related to his trip to San Francisco in March 2002 and may deduct his expenses for lodging, meals, and incidental expenses at the applicable per diem rates for those 11 days.

The credit card statements also show that petitioner was present in Honolulu at least 14 days in June, during which period he incurred expenses including some for lodging and meals. Petitioner asserts, and we believe, that he traveled to the Honolulu area union hall in June 2002 in search of a job, in which endeavor he was successful. Petitioner was employed by Matson Navigation as a port relief engineer in Honolulu on three different ships at various times totaling 9 days. Matson Navigation provided petitioner with meals on the days he was working aboard a vessel, and petitioner did not incur necessary meal expenses during the 9 days when he was employed by Matson Navigation. Matson Navigation generally did not provide housing for port relief engineers, and petitioner incurred lodging expenses for the 4 days that he was employed on two of Matson Navigation's ships in Honolulu. However, petitioner did not incur lodging expenses for the other 5 days he was employed by Matson Navigation on the SS Manulani. Petitioner also incurred lodging and meal expenses for the remaining 5 days in Honolulu during which he was seeking employment.

Petitioners claimed deductions for meals and incidental expenses for 16 days in Honolulu on their 2002 return. Petitioners have shown that petitioner was present in Honolulu and seeking employment or working for 14 days in June 2002. Petitioners are entitled to deductions at the applicable per diem

rate for lodging, meals, and incidental expenses for the 5 days that petitioner was not employed but was seeking work at the Honolulu area union hall. Petitioners are entitled only to lodging and incidental expense deductions for the 4 days that petitioner worked on two of Matson Navigation's ships and was provided meals but incurred lodging expenses. See Federal Travel Regulations, 41 C.F.R. sec. 301-11.18 (2002). For the 5 days between June 24 and June 28, during which petitioner worked for Matson Navigation on the SS Manulani and did not incur any lodging or meal expenses, petitioners may deduct the applicable per diem rate for incidental expenses only. See Johnson v. Commissioner, 115 T.C. at 210-211; Federal Travel Regulations, 41 C.F.R. sec. 301-11.18 (2002).

Other Job-Related and Miscellaneous Expenses

Petitioners claimed other job expense deductions in 2002 for medical exams, supplies, uniform expenses, and union dues. Respondent has allowed a deduction of $718.45 for petitioner's union dues paid in 2002. Petitioners have not established that they paid more than the amount respondent has allowed for petitioner's union dues in 2002. Petitioners have not substantiated the amount of any of the other miscellaneous expenses they claimed on their 2002 return. Although petitioners presented copies of their credit card statements for 2002, the statements do not list any items purchased by petitioner and

include charges for patently personal expenses.  Petitioners are not entitled to deductions for "other expenses" beyond those conceded by respondent.

In reaching our decision, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are irrelevant, moot, or without merit.

<u>Decision will be entered under Rule 155.</u>