**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

MARTIN A. KAPP,
    *Defendant-Appellant.*

No. 07-56408

D.C. No.
CV-06-02136-GPS

OPINION

Appeal from the United States District Court
for the Central District of California
George P. Schiavelli, District Judge, Presiding

Argued and Submitted
December 10, 2008—Pasadena, California

Filed May 4, 2009

Before: Jerome Farris and Kim McLane Wardlaw, Circuit
Judges, and William W Schwarzer, District Judge.*

Opinion by Judge Schwarzer

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

## COUNSEL

Alan F. Broidy, Esq., Law Offices of Alan F. Broidy, APC, Los Angeles, California, for the defendant-appellant.

Richard T. Morrison, Deputy Assistant Attorney General, Gilbert S. Rothenberg, Jonathan S. Cohen and Gretchen M. Wolfinger, Attorneys, Tax Division, U.S. Department of Justice, Washington, D.C., for the plaintiff-appellee.

## OPINION

SCHWARZER, District Judge:

Martin A. Kapp appeals the district court's entry of a permanent injunction preventing him from preparing or assisting in preparing federal tax returns that assert the position that mariners are entitled to an unreimbursed deduction for meal expenses while working on board a ship, when no meal expenses are actually incurred (the "mariner's tax deduction"). He also appeals the grant of summary judgment for the government and the denial of his cross motion for summary judgment. We have jurisdiction of this timely appeal under 28 U.S.C. § 1291, and affirm the judgment of the district court.

## I.  Facts and Procedural History

Kapp is a Certified Public Accountant who specializes in preparing federal income tax returns for individuals employed in the transportation industry. This case relates to his preparation of federal tax returns for mariners who work on ocean-going ships and who are at sea for long periods without returning to port ("deep sea mariners"), and mariners who work on tug boats and barges ("tug and barge mariners"), which return to port more frequently. Deep sea mariners are provided meals by their employer while working on board the

ship. Tug and barge mariners also typically do not incur meal related expenses.

Between approximately January 1997 and February 2006 Kapp prepared tax returns for mariners who lived on vessels in the course of their employment that claimed the mariner's tax deduction. Two of these returns were for Marin Johnson and Jim Westling, who were employed as deep sea mariners during the tax year in question. Both individuals were provided meals at no cost, but claimed a deduction based on the number of days at sea multiplied by the full meals and incidental expenses ("M&IE") rate.

The Internal Revenue Service ("IRS") disallowed the deductions, and Johnson and Westling filed petitions in the Tax Court. In 2000, the Tax Court held that although the mariners could deduct travel expenses while working away from home, Johnson and Westling could not deduct the full M&IE rate because they had not actually incurred meal expenses. *Johnson v. Comm'r*, 115 T.C. 210, 215 (2000); *Westling v. Comm'r*, 80 T.C.M. (CCH) 373, 373 (2000). They were permitted to deduct the incidental expenses portion of the M&IE rate, however, because the mariners paid for items including personal hygiene supplies and bottled water at the ship's store. *Johnson*, 115 T.C. at 215; *Westling*, 80 T.C.M. (CCH) at 376. After these rulings, the IRS modified its Revenue Procedures and issued two Chief Counsel Advisories which concluded that the taxpayer may not claim the full M&IE rate when only incidental expenses are incurred. *See, e.g.*, Rev. Proc. 2002-63 § 4.05, 2002-2 C.B. 691; I.R.S. Chief Counsel Advisory 200242038 (October 18, 2002), 2002 WL 31341876, at *13; I.R.S. Chief Counsel Advisory 200343025 (October 24, 2003), 2003 WL 22422671, at *6.

After the *Johnson* and *Westling* decisions, Kapp wrote several articles in a trade publication, *The Professional Mariner*, discussing potential tax deductions available to mariners. Kapp theorized about the different deductions available to

deep sea mariners, and acknowledged that "claiming this additional meal deduction [when meals are provided] is considered double dipping." He asserted that tug and barge mariners were entitled to claim the full M&IE deduction, reduced by the amount of their grocery allowance.[1] Although he temporarily stopped claiming deductions on behalf of deep sea mariners, he continued to file returns claiming the deduction on behalf of his tug and barge mariner clients.

In November 2003 the IRS notified Kapp that he was under investigation for conducting a tax shelter promotion. Attorney Dennis Perez represented Kapp. Perez and Kapp met with George Campos, the IRS agent in charge of the investigation, several times in 2004 and 2005. In a March 2005 meeting, the IRS informed Kapp that the mariner's tax deduction was not allowed under the Internal Revenue Code ("I.R.C."). A memorandum dated April 18, 2005 drafted by an attorney in Perez's firm concluded that little authority supported Kapp's position that either deep sea mariners or tug and barge mariners were entitled to deduct the full M&IE amount, because both types of mariners are typically provided meals by their employer at no cost.[2]

On May 2, 2005 Perez wrote a letter to Campos detailing Kapp's position on deductions for tug and barge mariners. He followed with a second letter on July 27, 2005 which stated that "although Mr. Kapp does not necessarily agree with the position you articulated for the first time in our meeting last month . . . he has agreed to cease claiming meal deductions as he has done previously." Campos did not respond to the

[1] A per person grocery allowance is typically provided to the captain of a ship to cover the costs of providing meals to the mariners while they are working. The captain uses the money to obtain groceries for the entire crew, and the food is cooked on board the ship.

[2] Although Kapp may have been able to assert the attorney-client privilege and work product protection, the memorandum was produced by his counsel during discovery.

letters. After completing his investigation, Campos prepared a final report concluding that "Mr. Kapp is instrumental in preparing erroneous returns and incorrectly interpreting the Internal Revenue Code." The government filed a complaint in April 2006 seeking an injunction that would prevent Kapp from claiming deductions for meals that are provided to an employee without cost.

During the course of the litigation, Kapp was deposed by the government. He stated that he did not routinely ask mariners whether they were provided meals free of charge by their employer before claiming a deduction on their behalf. Additionally, he acknowledged that while he stopped claiming the full M&IE deduction for deep sea mariners after the *Johnson* decision, he began claiming it again in late 2005 or early 2006 based on purported endorsement of his position by Campos, and because he needed to be more aggressive in claiming deductions to provide negotiating room with the IRS.

Both parties moved for summary judgment in February 2007. Kapp asserted that he was entitled to summary judgment because his position regarding the deemed substantiated deductions for mariners was legally correct and taken in good faith. The government argued that an injunction was proper because Kapp continued to claim the mariner's tax deduction even though he knew the deduction was improper. In August 2007 the district court granted summary judgment for the government and permanently enjoined Kapp from preparing tax returns that claim a deduction for meals that are provided to mariners without cost. The injunction also required that Kapp provide a list of clients for whom he prepared returns claiming these deductions, post a link to the court's order on his websites, and explain to his clients that the court determined that he had incorrectly advised them about the mariner's tax deduction.

Subsequent to the judgment enjoining Kapp, the Tax Court published two cases specifically addressing Kapp's position

regarding tug and barge mariners. *See Zbylut v. Comm'r*, 95 T.C.M. (CCH) 1172, 1175 (2008); *Balla v. Comm'r*, 95 T.C.M. (CCH) 1090, 1093 (2008). Relying on the *Johnson* decision, both cases held that tug and barge mariners could not use the regulations that permit deemed substantiated deductions for meals when no expense was incurred by the taxpayer. *Zbylut*, 95 T.C.M. (CCH) at 1175; *Balla*, 95 T.C.M. (CCH) at 1093.

## II.   Statutory Overview

[1] The I.R.C. § 162 permits taxpayers to deduct reasonable business expenses paid or incurred during the taxable year, including travel expenses such as meals and lodging.[3] I.R.C. § 162(a). However, § 274 disallows such deductions unless the taxpayer meets strict substantiation requirements. I.R.C. § 274(d). Section 274(d) also contains a provision that allows the Secretary of the Treasury ("Secretary") to create regulations that eliminate some or all of the substantiation requirements when the expense is below a prescribed amount. I.R.C. § 274(d). The applicable § 274 regulations authorize the Commissioner of Internal Revenue ("Commissioner") to create optional methods of computing travel expenses, including a per diem deduction for meals and incidental expenses, which satisfy the substantiation requirements of § 274(d). Treas. Reg. § 1.274-5(j)(1).

[2] The Commissioner issued Revenue Procedures which specify the Federal Travel Regulations M&IE rate as the amount that a taxpayer may deduct in lieu of substantiating the actual cost of meals.[4] Rev. Proc. 90-60, §§ 3.02, 4.03,

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years at issue.

[4]Revenue Procedure 90-60 § 4.03 provides in relevant part:

"In lieu of using actual expenses, employees and self-employed individuals, in computing the amount allowable as a deduction

1990-2 C.B. 651. The Commissioner updates these Revenue Procedures annually, but the relevant provisions have remained substantially the same since 2000. *See, e.g.,* Rev. Proc. 2000-39, 2000-2 C.B. 340; 2001-47, 2001-2 C.B. 332; 2004-60, 2004-2 C.B. 682; 2005-67, 2005-2 C.B. 729. Travel expenses below the threshold M&IE amounts are deemed substantiated and the taxpayer is not required to provide documentation in order to deduct the expense. Rev. Proc. 90-60, § 4.03, 1990-2 C.B. 651.

**[3]** Additionally, the Federal Travel Regualtions provide that the M&IE rate must be adjusted for a meal furnished to the taxpayer (except as provided in § 301-11.17) by deducting the appropriate amount. 41 C.F.R. § 301-11.18. However, "[a] meal provided by a common carrier or a complimentary meal provided by a hotel/motel does not affect your per diem." 41 C.F.R. § 301-11.17. Ships are included within the definition of common carriers. 41 C.F.R. § 301-10.100.

## III.   Standard of Review

A summary judgment granting a permanent injunction is generally reviewed for abuse of discretion. *Sprint Tel. PCS, L.P. v. County of San Diego*, 490 F.3d 700, 708 (9th Cir. 2007). However, we review "any determination underlying the grant of an injunction by the standard that applies to that determination." *Id.* (quoting *Ting v. AT & T*, 319 F.3d 1126, 1134-35 (9th Cir. 2003)). "Thus, we review a district court's findings of fact for clear error and its determinations of law . . . de novo". *Id.*

---

for ordinary and necessary meal and incidental expenses paid or incurred for travel away from home, may use an amount computed at the Federal M&IE rate for the locality of travel for each calendar day . . . the employee or self-employed individual is away from home." Rev. Proc. 90-60, § 4.03, 1990-2 C.B. at 653.

The determination that there are no genuine issues of material fact that preclude the entry of summary judgment is reviewed *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *See United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1164 (9th Cir. 2000).

## IV.   Entry of the Injunction

### A.   Standard for injunctive relief.

[4] The district court enjoined Kapp from preparing tax returns claiming the mariner's tax deduction under I.R.C. § 7407. An injunction is proper under § 7407 if the court finds that the tax preparer has engaged in conduct subject to penalty under § 6694, and an injunction is appropriate to prevent recurrence of the violation. Section 6694 provides that a tax return preparer is subject to penalty if he prepares a return with understated liability due to an unreasonable position not supported by substantial authority. I.R.C. § 6694.

[5] The applicable regulations further define what conduct is subject to penalty under § 6694. The regulations provide that a person has a reasonable basis for his position "if a reasonable and well-informed analysis by a person knowledgeable in tax law would lead such a person to conclude that the position has approximately a one in three, or greater, likelihood of being sustained on the merits . . ." Treas. Reg. § 1.6694-2(b)(1). Additionally, the substantial authority standard is objective, and is not affected by the taxpayer's subjective belief in the correctness of his position. Treas. Reg. § 1.6662-4(d)(3)(i). The government bears the burden of proving each element for enjoining a tax preparer by a preponderance of the evidence. *See United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1102 (9th Cir. 2000).

Thus, the district court properly enjoined Kapp if (1) he prepared a return that understated liability, (2) due to an unreasonable position, i.e., a position that objectively had a

less than one in three chance of being sustained on the merits, and (3) an injunction is appropriate to prevent recurrence.

### B. Kapp prepared returns that understated tax liability.

Kapp argues that mariners do not have to pay or incur meal expenses in order to claim a deduction under the regulations that allow certain expenses to be deemed substantiated without documentation. He notes that meals provided by common carriers are not required to be subtracted from the allowed per diem deduction amount, and that ships are included within the definition of common carriers. C.F.R. § 301-11.17, -10.100. Therefore, he reasons that mariners who are provided meals while on board a ship should be allowed to claim the full M&IE allowance for days at sea, even though no meal expense is incurred. Kapp also creates several complicated hypothetical examples to support his argument that under the § 274 regulations, certain travelers could claim a deduction for deemed substantiated expenses when no actual costs are incurred.

[6] Kapp's argument is based on a misunderstanding of the regulations that create the deemed substantiated exception. He essentially argues that Executive Branch agency regulations can be manipulated to subvert provisions of the I.R.C. enacted by Congress. The regulations are intended to interpret and assist in the enforcement of the I.R.C., not to undermine it. The I.R.C. gives the Secretary and the Commissioner discretionary authority to issue regulations to ease the burden on taxpayers, who would otherwise have to meet the extensive substantiation requirements of § 274 in order to claim deductions for business related travel. I.R.C. § 274(d); *see additionally Balla*, 95 T.C.M. (CCH) at 1092. The regulations, however, do not eliminate the requirement in § 162 that expenses must be paid or incurred in order to be deducted.[5]

---

[5]Kapp points to an opinion issued by the General Counsel for the Office of the Inspector General at the Department of Justice that examines the per

**[7]** The regulations reflect the requirements of § 162. In the first section outlining their purpose, the regulations state that they "provide[ ] an optional method for employees and self-employed individuals who *pay or incur* meal costs to use in computing the deductible costs of business meal and incidental expenses *paid or incurred* while traveling away from home." Rev. Proc. 90-60, §1, 1990-2 C.B. 651 (emphasis added). After the *Johnson* decision, the regulations were altered to provide a method for computing the applicable deduction for incidental expenses when no meal costs are paid and incurred. *See, e.g.*, Rev. Proc. 2002-63 § 4.05, 2002-2 C.B. 691.

**[8]** Therefore, a meal provided by a common carrier need not be deducted from the per diem M&IE rate under 41 C.F.R. § 301-11.17, but a taxpayer cannot take the per diem deduction if he does not incur any meal related expenses. Rev. Proc. 90-60, §1, 1990-2 C.B. 651. Additionally, Kapp's examples of individuals who may attempt to manipulate the regulations to claim impermissible deductions when they do not incur expenses does not alter the requirement in § 162 that expenses must be paid or incurred in order to be deducted. Because Kapp claimed deductions on behalf of mariners who did not pay or incur meal expenses, he prepared returns that understated liability.

## C.   Kapp's position was unreasonable.

Kapp argues that even if he incorrectly claimed the mariner's tax deduction for taxpayers who incurred no meal costs, his position was not unreasonable and was supported by sub-

diem travel allowances paid to border patrol agents. He claims that the opinion supports his position that expenses need not be paid or incurred to be deducted. The opinion concludes that border patrol agents can accept complimentary meals provided by their hotel without affecting their per diem. However, the border patrol agents, unlike mariners, incur other meal related expenses while traveling.

stantial authority. The analysis of the reasonableness of his position differs slightly for deep sea and tug and barge mariners, and we discuss each group separately.

### 1. Deep sea mariners

**[9]** Kapp's assertion that deep sea mariners were permitted to take the mariners tax deduction is patently unreasonable in light of the ruling in the *Johnson* case. In that case, which arose from conduct nearly identical to the conduct that is the basis of the injunction, the court stated "[w]e do not read the revenue procedures to allow a taxpayer to use the full M&IE rates when he or she incurs only incidental expenses." *Johnson*, 115 T.C. at 227. Kapp unsuccessfully attempts to distinguish *Johnson*, but the clear implication of the holding is that taxpayers may not deduct meal expenses when no such expenses are incurred. *Id.* Kapp acknowledged as much himself in his *The Professional Mariner* articles.

Kapp claims that he recently resumed the practice of taking a deduction on behalf of his deep sea mariner clients based on alleged approval of the position by Campos. In his declaration submitted in opposition to the government's summary judgment motion Kapp stated that:

> I had a long meeting with IRS Agent George Campos on August 12, 2005, during which I reviewed my legal position with him in detail . . . . At the end of the meeting, Mr. Campos sort of threw his arm around me and stated 'Now I understand.' Since Mr. Campos at no time during or after the . . . meeting stated that he disagreed with my position, or that my position was frivolous, I interpreted Mr. Campos'[s] statement as an endorsement of my legal position . . .

**[10]** Even accepting the accuracy of Kapp's description of his interaction with Campos, the conduct is not an affirmation of Kapp's position allowing him to claim the deduction on

behalf of deep sea mariners, especially in light of the *Johnson* ruling. Because a well-informed analysis of the issue by a person knowledgeable in tax law would not lead to the conclusion that Kapp's position had at least a one in three chance of being sustained on the merits, his position was unreasonable and not based on substantial authority.

## 2. Tug and barge mariners

**[11]** Kapp argues that claiming the mariner's tax deduction for tug and barge mariners was reasonable because *Johnson* applied only to deep sea mariners. He contends that taking the deduction on behalf of tug and barge mariners, who return to port more frequently, presented novel issues. Although the *Johnson* case arose from a slightly different factual situation, the principles of the Tax Court's holding clearly extend to tug and barge mariners. The essence of the court's holding is that individuals may not deduct the full M&IE rate when they do not incur meal expenses. *Johnson*, 115 T.C. at 227. By extension, if tug and barge mariners do not incur meal expenses, they may not take a deduction. The frequency of a mariner's return to port is irrelevant to the holding of the case.

**[12]** A memorandum prepared by an associate of Kapp's lawyer Perez concluded there was little support for Kapp's position that tug and barge mariners could deduct meal expenses when no cost was incurred. Although Kapp claims that he asked Perez to play "devil's advocate" and draft a memorandum that laid out the arguments in opposition to his position, the memorandum presents an even-handed examination of the issues and states that "little if any authority relied on by Mr. Kapp supports the position that he takes." After thoroughly analyzing a host of Tax Court cases and IRS publications, the memorandum concludes that although the "analysis does not foreclose the possibility that Mr. Kapp could ultimately be successful on the issue . . . . it appears to me that the weight of authority favors the Government on this issue." Shortly after the date of this memorandum, Perez wrote a let-

ter to Campos stating that although Kapp did not agree with the position taken by the IRS, he agreed to stop claiming the deduction.

**[13]** Additionally, in two rulings issued after the district court entered the injunction against Kapp, the Tax Court rejected the contention that tug and barge mariners were entitled to deduct the full M&IE allowance when no meal costs were incurred. *Zbylut*, 95 T.C.M. (CCH) at 1175; *Balla*, 95 T.C.M. (CCH) at 1093.[6] While we cannot evaluate the reasonableness of Kapp's position in light of these rulings issued after the IRS investigation, it is worth noting that the Tax Court stated that the issues presented were not novel, and relied heavily on the reasoning in *Johnson* to reach its conclusion. *Zbylut*, 95 T.C.M. (CCH) at 1175; *Balla*, 95 T.C.M. (CCH) at 1093.

**[14]** Although there was no precedent at the time Kapp prepared the returns that specifically stated tug and barge mariners may not claim the mariner's tax deduction, a well-informed analysis by a person knowledgeable in tax law would have led to the conclusion that Kapp's position had less than a one in three chance of being sustained on the merits. Therefore, his position was unreasonable and not supported by substantial authority.

---

[6]Kapp argues that these cases are distinguishable because the court found that neither taxpayer worked on board a common carrier. Therefore, they could not benefit from the provisions of 41 C.F.R. § 301-11.17, which provides that common carrier meals are not counted against the federal M&IE rate. As explained above, however, the common carrier exception only comes into play if the taxpayer is entitled to a per diem deduction for travel expenses in the first place, i.e., pays or incurs some travel related expenses.

### D. The injunction was necessary to prevent recurrence.

The district court's finding that an injunction is necessary is a fact sensitive determination which we review for clear error. *See Sprint Tel. PCS* , 490 F.3d at 708.

**[15]** Kapp acknowledged that although he stopped claiming the mariner's tax deduction for deep sea mariners after the *Johnson* case, he later began claiming it based on a purported endorsement of his position by Campos, and because he needed negotiating room with the IRS. Kapp's weak justification for claiming the deduction in light of clear precedent to the contrary supports the issuance of an injunction as to deep sea mariners.

**[16]** The injunction is also appropriate as to deductions for tug and barge mariners. Kapp asserts that he would never claim the deduction after the *Balla* and *Zbylut* cases, unless they are overturned on appeal, and that an injunction is not warranted. Kapp's conduct, however, suggests that an injunction is necessary. Although his attorney represented that Kapp would stop claiming the deduction for tug and barge mariners, he continued to claim these deductions. Given that Kapp acted in a manner contrary to the assurances he provided to the government, and continued to claim deductions for deep sea mariners in spite of clear authority to the contrary, the district court did not abuse its discretion in issuing the injunction.

### E. Good faith defense

**[17]** A tax preparer who prepares a return that understates liability due to an unreasonable position may still avoid a penalty under § 6694 if he can show that there is reasonable cause for the understatement and he acted in good faith. I.R.C. § 6694(a)(2)(B), (a)(3). The associated § 6694 regulations list five factors to consider in evaluating whether the tax preparer can assert the good faith defense: (1) the nature of the error,

(2) the frequency of the errors, (3) the materiality of the errors, (4) the preparer's normal office practice, and (5) reliance on advice of another preparer. Treas. Reg. § 1.6694 2(d). The taxpayer bears the burden of establishing a good faith defense. I.R.C. § 6694(a)(3); Treas. Reg. § 1.6694-2(e)(2).

Kapp argues that he is not subject to a penalty because he acted in good faith by seeking the advice of numerous government officials and attorneys. He asserts that he contacted several attorneys at the main IRS office in Washington, D.C. to seek comment on his *Professional Mariner* articles, and to discuss the ability of tug and barge mariners to take the mariner's tax deduction in light of the *Johnson* ruling. He also contacted a high ranking General Services Administration ("GSA") employee responsible for administering the Federal Travel Regulations, to confirm his understanding that meals provided by a common carrier need not be deducted from the per diem M&IE amount. Additionally, he claims to have relied on the advice of Steven Stolar and Ellin Palmer, two private sector attorneys. Finally, he asserts that he is entitled to assert a good faith defense because several of the returns he prepared claiming the mariner's tax deduction were audited by the IRS, and the agency did not require any changes.

[18] Although Kapp made efforts to seek comment on and support for his position, his efforts do not allow him to claim the good faith defense. The government employees contacted by Kapp do not qualify as preparers under the regulations, and he was not entitled to rely on their advice. *See* Treas. Reg. § 301.7701-15(a); 301.7701-15(a)(6) (defining a "preparer" as a person who prepares returns for compensation and specifically excluding IRS employees performing official duties). Even if the government employees qualified as preparers under the regulations, Kapp is not entitled to rely on their advice unless he can demonstrate that they were aware of all the relevant facts. Treas. Reg. § 1.6694-2(d)(5)(ii). The correspondence between the GSA employee and Kapp does not

demonstrate that the GSA employee was aware that the taxpayers in question do not pay or incur any meal expenses. Additionally, the IRS attorneys contacted by Kapp informed him that they could not officially comment on his articles, and that there was no procedure to set up a meeting to provide advice specific to his situation.

**[19]** Kapp also claims to have relied on the advice of private sector attorneys Stolar and Palmer, but he has failed to show that either attorney qualifies as a preparer. Even assuming that they qualify, Kapp failed to demonstrate that either was aware of all of the relevant facts underlying the returns he filed claiming the mariner's deduction. The record shows that he had general conversations with Palmer about travel regulations and the *Johnson* case, and that Stolar reviewed and agreed with his *Professional Mariner* articles. General conversations about regulations and cases and review of an article, however, do not demonstrate that either Stolar or Palmer analyzed the relevant facts and advised Kapp that his position was correct. Kapp's counsel during the investigation, the only attorneys who appear to have analyzed his position in light of all the relevant facts, concluded that he was not entitled to claim the deduction.

**[20]** Finally, Kapp is not entitled to rely on "no change" determinations made in IRS audits. *See* I.R.C. § 6110(k)(3) ("a written determination may not be used or cited as precedent"). Therefore, Kapp is not entitled to assert a good faith defense for his violations of § 6694, and the district court did not err in entering the injunction against him under § 7407.

## V.   Scope of the Injunction

Kapp argues that the injunction is vague and overbroad for two reasons. First, he claims that it prevents him from claiming deductions that other tax preparers are allowed to claim. Second, he claims that it prevents him from claiming tax

deductions that are available to his other transportation indus-
try clients, such as airline pilots.

**[21]** The district court's injunction prevents Kapp from pre-
paring returns claiming a tax deduction for meals that are pro-
vided to mariners at no cost. The Tax Court's decisions in
*Johnson*, *Balla* and *Zbylut*, however, prevent any tax preparer
from claiming such a deduction. The injunction does not place
Kapp at a unique disadvantage relative to other tax preparers.

**[22]** Additionally, the injunction does not prevent Kapp
from claiming deductions for mariners that he is entitled to
claim for other clients.[7] Section 162 requires that all business
expenses must be paid or incurred in order to be deducted.
The Commissioner has discretionary authority to issue regula-
tions that alter substantiation requirements under § 274. Treas.
Reg. § 1.274-5(j)(1). It is possible that some of these regula-
tions, intended to ease the burden on taxpayers, create situa-
tions where an unscrupulous taxpayer may claim a deemed
substantiated deduction when no expense is actually incurred.
The regulations do not, however, eliminate the requirement
that expenses must be paid and incurred before they can be
deducted. All taxpayers, regardless of occupation, must first
pay or incur expenses before they are entitled to take a deduc-
tion. I.R.C. § 162.

## VI. Summary Judgment

**[23]** Kapp asserts that there are several disputed material
facts related to his ability to claim a good faith defense and

---

[7]Kapp notes that the regulations permit employees to receive tax-free
per diem or hourly travel allowance payments instead of deducting
expenses on their tax returns. Rev. Proc. 90-60, §§ 3.03, 4.01, 1990-2 C.B.
651. He argues that an employee, such as an airline pilot, can collect this
payment when traveling regardless of whether he pays or incurs expenses.
However, the code limits per diem allowances to the amount that the
payor reasonably anticipates will be incurred by the employee. Rev. Proc.
90-60, § 3.01(1), 1990-2 C.B. 651.

that the district court erred in granting summary judgment for the government. A disputed fact is material only if it can affect the outcome of the suit under governing law. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008), (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Kapp argues that there were disputed facts related to his discussions with a GSA official regarding deductions for common carrier meals, his interactions with IRS attorneys, his reliance on the advice of his own counsel, and numerous "no change" audit letters issued by the IRS. However, even if we accept Kapp's assertions, these facts are not material because they would not entitle him to assert a good faith defense under § 6694 and the associated regulations. Treas. Reg. § 1.6694-2(d). As discussed in Section IV(E), *supra*, the individuals Kapp consulted do not fall within the definition of a preparer, and he was not entitled to rely on their advice because they were not aware of all the relevant facts. Additionally, audit letters he relies on are not precedential. I.R.C. § 6110(k)(3). Therefore, the district court did not err in granting summary judgment for the government.

**AFFIRMED.**