T.C. Summary Opinion 2011-95

UNITED STATES TAX COURT

JAC E. AND CYNTHIA L. BAKER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25951-08S.               Filed July 19, 2011.

<u>Ellin V. Palmer</u>, for petitioners.

<u>Cassidy B. Collins</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.  Pursuant to
section 7463(b), the decision to be entered is not reviewable by
any other court, and this opinion shall not be treated as
precedent for any other case.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined the following deficiencies and penalties with respect to petitioners' 2005, 2006, and 2007 Federal income tax returns:

| Year | Deficiency | Penalty Sec. 6662(a)[1] |
|------|-----------|-------------------------|
| 2005 | $3,945 | $791 |
| 2006 | 3,900 | 780 |
| 2007 | 2,462 | 492 |

[1]All penalty amounts are rounded to the nearest dollar.

After concessions,[1] the issues for decision are whether: (1) Each petitioner's tax home is the couple's personal residence; and (2) petitioners are entitled to deduct certain unreimbursed employee business expenses reported on Schedule A, Itemized Deductions.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the exhibits received into evidence are incorporated herein

---

[1]Respondent concedes that petitioners are entitled to deductions for tax preparation fees and that Mrs. Baker is entitled to deductions for work uniform expenses. Respondent also concedes that Mr. Baker is entitled to deduct incidental expenses of $716, $1,124, and $1,181 for 2005, 2006, and 2007, respectively. Petitioners did not address amounts respondent disallowed for "other expenses" of $3,111, $1,251, and $552 for 2005, 2006, and 2007, respectively. Therefore, these amounts are deemed conceded.

by reference.  At the time petitioners filed their petition, they resided in the State of Washington.

At all relevant times Mr. Baker was employed as a tug master for Young Brothers, Ltd. (Young Brothers), based in Honolulu, Hawaii.  Young Brothers provides interisland cargo services throughout the islands that constitute the State of Hawaii.  Mr. Baker would fly from Seattle to Honolulu for work.  According to U.S. Coast Guard certificates of discharge to merchant seaman, Mr. Baker worked the following shifts during the years in issue:

| <u>2005</u> | <u>2006</u> | <u>2007</u> |
|---|---|---|
| Jan. 1-Jan. 15 | Jan. 4-Feb. 1 | Jan. 1-Jan. 8 |
| Feb. 28-Mar. 23 | Mar. 2-Apr. 5 | Jan. 8-Jan. 10 |
| Mar. 23-Mar. 27 | May 4-June 2 | Jan. 10-Jan. 20 |
| Mar. 28-Apr. 1 | July 5-Aug. 7 | Mar. 7-Apr.17 |
| May 1-May 26 | Sept. 16-Oct. 29 | May 16-June 18 |
| July 2-July 5 | Nov. 29-Dec. 16 | July 28-Aug. 12 |
| July 5-July 7 | Dec. 27-Dec. 31 | Sept. 1-Sept. 30 |
| July 7-July 9 | | Oct. 15-Oct. 24 |
| July 9-Aug. 4 | | Nov. 1-Dec. 1 |
| Sept. 1-Sept. 28 | | |
| Sept. 28-Oct. 4 | | |
| Nov. 2-Dec. 2 | | |

Young Brothers did not reimburse Mr. Baker for the expenses he incurred for travel between his personal residence in Washington and Hawaii.  Mr. Baker generally worked for 1 month

and then had 1 month off.  Mr. Baker also accrued vacation time that could be used during his shifts.

For most of Mr. Baker's shifts, he worked on the vessel Malulani and began and ended each voyage in the Honolulu, Hawaii, port.  Each tug voyage lasted approximately 3 days.  On eight occasions during the years in issue, Mr. Baker either began or ended his voyage in a port other than Honolulu:  five of these occasions were in neighboring islands in Hawaii and three were in the continental United States.[2]

From the time Mr. Baker arrived at the port in Honolulu until his 1-month shift ended, he was allowed to sleep aboard the vessel upon which he worked.  Young Brothers did not provide Mr. Baker any meals while the vessel was docked at the Honolulu port; but as soon as the vessel left Honolulu, Young Brothers provided all of Mr. Baker's meals.  This included when the vessel was docked at neighboring islands for the unloading of a barge's cargo.  As Mr. Baker incurred expenses related to his employment, he documented them in a calendar.  Mr. Baker's employment with Young Brothers was permanent and for an indefinite period.

Around 1985 Mrs. Baker was training to be a flight attendant with Regent Air (Regent).  Her rotation with Regent would have

---

[2]Mr. Baker began or ended four voyages in the Hono Hi, Hawaii, port.  He ended one voyage in the Kahului, Hawaii, port. Mr. Baker also began or ended a voyage in the Seattle, Washington, Portland, Oregon, and Astoria, Oregon, ports.

been a nonstop flight from Honolulu, Hawaii, to New York. During Mrs. Baker's training Regent lost its financiers and the airline discontinued its plans for the nonstop route from Honolulu to New York. Although the opportunity with Regent was no longer available, Mrs. Baker's interest in being a flight attendant had been piqued, and she began looking for opportunities with other airlines.

Mrs. Baker found that opportunity with Delta Airlines (Delta). Mrs. Baker has been a flight attendant with Delta for 25 years. During the years in issue Mrs. Baker's base station was JFK International Airport (JFK) in New York, New York. She flew from Seattle, Washington, to New York, New York, to begin each flight rotation.

At all relevant times Mrs. Baker kept an apartment in New York City that she shared with nine other individuals.[3] During the years in issue she worked an international rotation serving only European countries. In 2005 Mrs. Baker flew the 1st through the 15th of each month. In 2006 and 2007 she flew one to four times a month. An international rotation would generally last from 3 to 4 days. Although Mrs. Baker recorded rotation numbers and lengths of rotations on her calendar, no evidence was

---

[3]The record contains no other information about the apartment or Mrs. Baker's portion of the expenses associated with the apartment.

presented that documented the European cities in which she had layovers or the days she was in those cities.

Mrs. Baker received flight pay and a per diem from Delta. Flight pay started when the airplane door closed and the airplane pushed back from the gate. Mrs. Baker's "time away from base" pay (TAFB), or per diem, began when she signed in at JFK for her rotation and ended when she returned to New York. Delta's TAFB for international rotations for the years in issue was $2.40 an hour. Mrs. Baker's employment with Delta was permanent and for an indefinite period.

Mrs. Baker incurred expenses for traveling from her home to Seattle-Tacoma International Airport (SEA-TAC). Delta did not reimburse Mrs. Baker for the expenses she incurred for travel between her personal residence and SEA-TAC, nor the expenses she incurred for travel from SEA-TAC to New York City. When Mrs. Baker was in New York City and not working, she had to purchase her own meals. She also incurred expenses for taxis from her New York City apartment to JFK. While the airplane was in flight, Mrs. Baker was provided one meal. Upon arrival at a layover destination, Delta provided transportation to a hotel and covered the cost of the hotel room. Delta did not cover tips paid to the taxi or van drivers who shuttled the flight crew to hotels. Mrs. Baker did not claim her actual expenses while on layovers in Europe because she had "my per diem, or my government allowance."

Mrs. Baker used a calendar to record the expenses she incurred in the United States.  All of the receipts she provided for the years in issue were for her mileage costs in Seattle and expenses she incurred in the United States.

Petitioners' 2005, 2006, and 2007 Federal income tax returns were prepared by the certified public accountant (C.P.A.) who had prepared their returns for several years before the years in issue.  Petitioners' C.P.A. also prepared the couple's amended returns for 2005 and 2006.  In 2005 petitioners claimed job expenses and miscellaneous itemized deductions of $22,414, of which $13,353 and $5,155 were unreimbursed employee business expenses for Mr. Baker and Mrs. Baker, respectively.[4]  In 2006 petitioners claimed job expenses and miscellaneous itemized deductions of $17,621, of which $11,281 and $3,744 were unreimbursed employee business expenses for Mr. Baker and Mrs. Baker, respectively.  In 2007 petitioners claimed job expenses and miscellaneous itemized deductions of $12,134, of which unreimbursed employee business expenses were $10,435.  The 2007 unreimbursed employee business expenses are attributable only to Mr. Baker.  No Forms 2106, Employee Business Expenses, were filed with any of the Federal income tax returns for the years in issue.

---

[4]The 2-percent floor of sec. 67(a) was applied to petitioners' job expenses and miscellaneous itemized deductions for each year in issue.

Respondent mailed petitioners a notice of deficiency that disallowed all of their job expenses and miscellaneous itemized deductions for 2005 and 2007 and all but $195 of the expenses and deductions claimed for 2006. Respondent also determined a section 6662(a) accuracy-related penalty for each year in issue.

<u>Discussion</u>

I.   <u>Burden of Proof</u>

The Commissioner's determinations are presumed correct, and generally taxpayers bear the burden of proving otherwise. Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Petitioners moved for a section 7491(a)(1) burden shift in their pretrial memorandum. Petitioners failed to meet the substantiation and recordkeeping requirements of section 7491. See sec. 7491(a)(2)(A) and (B). Therefore, the burden remains on petitioners.

Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to the deductions claimed. Rule 142(a)(1); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). Taxpayers are required to substantiate claimed deductions by keeping and producing adequate records that enable the Commissioner to determine the correct tax liability. Sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

If a taxpayer establishes that he or she has incurred a deductible expense yet is unable to substantiate the exact amount, the Court may estimate a deductible amount, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis any allowance would amount to unguided largesse. Williams v. United States, 254 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

However, the Court may not estimate a taxpayer's expenses with respect to the items enumerated in section 274(d). Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Section 274 requires strict substantiation for any traveling expense under section 162. Sec. 274(d)(1). Section 274(d) and the regulations thereunder require taxpayers to substantiate their deductions by adequate records or sufficient evidence establishing the amount, time, place, and business purpose of the expense to corroborate the taxpayer's own testimony. See sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In the absence of evidence establishing the elements of the expenditure or use, deductions must be disallowed entirely. Sec. 274(d); Sanford v.

Commissioner, supra; see also sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

## II. Section 162 Expenses

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. An expense is considered ordinary if commonly or frequently incurred in the trade or business of the taxpayer. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). An expense is necessary if it is appropriate and helpful in carrying on a taxpayer's trade or business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Welch v. Helvering, supra at 113. Services performed by an employee constitute a trade or business for this purpose. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988).

Section 162(a)(2) allows a taxpayer to deduct traveling expenses, including amounts expended for meals and lodging, if such expenses are: (1) Ordinary and necessary, (2) incurred while away from home, and (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). "The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors." Id. at 477.

This Court has generally defined the word "home" (or tax home) as used in section 162(a)(2) to mean the vicinity of a

taxpayer's principal place of business. <u>Mitchell v. Commissioner</u>, 74 T.C. 578, 581 (1980); <u>Daly v. Commissioner</u>, 72 T.C. 190 (1979), affd. 662 F.2d 253 (4th Cir. 1981); <u>Kroll v. Commissioner</u>, 49 T.C. 557, 561-562 (1968). Under this definition, commuting expenses are not deductible and are considered personal expenses. <u>Anderson v. Commissioner</u>, 60 T.C. 834, 835 (1973); see sec. 262.

On the other hand, if a taxpayer accepts temporary employment outside of the vicinity of his principal place of residence, his travel expenses are generally deductible because it would be unreasonable for him to move his residence for temporary employment. <u>Ireland v. Commissioner</u>, T.C. Memo. 1979-386 (citing <u>Tucker v. Commissioner</u>, 55 T.C. 783, 786 (1971)). If a taxpayer does not have a principal place of business, his personal residence will be considered his tax home. <u>Johnson v. Commissioner</u>, 115 T.C. 210, 221 (2000) (citing <u>Rambo v. Commissioner</u>, 69 T.C. 920 (1978), <u>Dean v. Commissioner</u>, 54 T.C. 663 (1970), and <u>Leach v. Commissioner</u>, 12 T.C. 20 (1949)). A taxpayer must have a tax home from which to be away to be entitled to a deduction under section 162(a)(2). <u>Henderson v. Commissioner</u>, T.C. Memo. 1995-559, affd. 143 F.3d 497 (9th Cir. 1998). "Married couples that both work and file a joint tax return may have separate tax homes." <u>Allen v. Commissioner</u>, T.C. Memo. 2009-102; see <u>Hammond v. Commissioner</u>, 20 T.C. 285, 287-288

- 12 -

(1953), affd. 213 F.2d 43 (5th Cir. 1954); <u>Chwalow v.
Commissioner</u>, T.C. Memo. 1971-185, affd. 470 F.2d 475, 478 (3d
Cir. 1972).  In order to decide what expenses and deductions
petitioners are entitled to, the Court must first decide where
each petitioner's tax home is located.  The "determination of a
taxpayer's tax home is a question of fact to be decided on the
entire record."  <u>Nicholls v. Commissioner</u>, T.C. Memo. 1995-291
(citing <u>Coombs v. Commissioner</u>, 608 F.2d 1269, 1274 (9th Cir.
1979), affg. in part and revg. in part 67 T.C. 426 (1976)).

   A.   <u>Mr. Baker's Tax Home</u>

Petitioners relied heavily upon the cases of <u>Johnson v.
Commissioner</u>, <u>supra</u>, and <u>Westling v. Commissioner</u>, T.C. Memo.
2000-289.[5]  In <u>Johnson</u> the taxpayer husband was a merchant seaman
who lived in Freeland, Washington, and was the captain of a
vessel that sailed worldwide to deliver equipment to the U.S.
military.  The taxpayer husband's employer's primary office was
in Jacksonville, Florida.  <u>Johnson v. Commissioner</u>, <u>supra</u> at 211.
The taxpayer husband and his crew flew to and from whatever port
around the world the vessel was docked in to begin and end each
work shift.  <u>Id.</u> at 211-212.  The Court found that the taxpayer
husband had no principal place of business and that his personal
residence was his tax home.  <u>Id.</u> at 221.  To support its finding

---

[5]Petitioners' C.P.A. also prepared the taxpayers' returns in
<u>Johnson v. Commissioner</u>, 115 T.C. 210 (2000), and <u>Westling v.
Commissioner</u>, T.C. Memo. 2000-289.

the Court noted that the taxpayer-husband's family did not travel with him and that there was no reason to second guess the taxpayer-husband's decision to maintain his principal residence in Washington State instead of Florida or one of the many cities to which he traveled. Id. at 222.

In Westling v. Commissioner, supra, the Court did not discuss the taxpayer's tax home but whether he was entitled to use the Federal per diem rates to determine his incidental expenses for his employment as a merchant seaman. The taxpayer's employer's primary office was in Juneau, Alaska, and the taxpayer piloted a tugboat to various ports in and around southeast Alaska. Id. The taxpayer also began and ended his shifts on the tugboat at several different ports. Id. Although there was no discussion of the taxpayer's tax home, the Court found that the taxpayer was entitled to deduct his incidental expenses using the Federal per diem rate because the taxpayer's meals and lodging were supplied by his employer at no charge when he was working. Id.

Mr. Baker's employment situation is factually different from those of the taxpayers in Johnson and Westling. Mr. Baker's employer's primary office was in Honolulu, Hawaii. The home port of the vessel Malulani, on which Mr. Baker worked most of his shifts, was Honolulu. Although the vessel traveled to several ports throughout the State of Hawaii, Mr. Baker began and ended

most of his voyages at the vessel's home port in Honolulu. Only eight times in 3 years did Mr. Baker begin or end a voyage in a port other than Honolulu. No evidence was presented that there was a business reason for Mr. Baker's personal residence's being in Washington and not Honolulu. Mr. Baker's decision to commute from Washington to Honolulu was a personal decision, not a business decision. See Commissioner v. Flowers, 326 U.S. at 477; see also sec. 262. Therefore, Mr. Baker's tax home for the years in issue was Honolulu, the location of his principal place of business.

B.    Mrs. Baker's Tax Home

Mrs. Baker began and ended each of her flight rotations at JFK. Delta considered JFK to be Mrs. Baker's base station. This Court has consistently held that an airline employee's principal place of business is his or her base station. See Sislik v. Commissioner, T.C. Memo. 1989-495 (Pan American World Airways, Inc. pilot's tax home was JFK, not his condominium in the Bahamas), affd. per order (D.C. Cir., May 22, 1992); Dean v. Commissioner, T.C. Memo. 1976-379 (Trans World Airline first officer's tax home was JFK, not his personal residence in Kansas City, Missouri). Mrs. Baker's situation is not different from those cited above. Mrs. Baker chose to live in Washington and commute to JFK. Therefore, Mrs. Baker's tax home was JFK for the years in issue, the location of her principal place of business.

C.    Petitioners' Unreimbursed Employee Business Expenses

Petitioners presented evidence of travel expenses, including meals and lodging, and incidental expenses that they claimed they incurred while traveling away from home for purposes of section 162(a)(2).

The Internal Revenue Service publishes an annual revenue procedure that offers optional methods of substantiation for employees who incur:  (1) Meals and incidental expenses (M&IE) while traveling away from home and who receive a per diem allowance from an employer; or (2) unreimbursed incidental expenses but pay or incur no meal costs.  See Rev. Proc. 2005-10, 2005-1 C.B. 341; Rev. Proc. 2005-67, 2005-2 C.B. 729; Rev. Proc. 2006-41, 2006-2 C.B. 777; Rev. Proc. 2007-63, 2007-2 C.B. 809.[6]

Under the revenue procedures, an employee who receives an M&IE only per diem from her employer may treat the lesser of the employer's per diem or the Federal M&IE rate for the locality of travel for that day or partial day as deemed substantiated.  Rev. Proc. 2005-10, sec. 4.02, 2005-1 C.B. at 343; Rev. Proc. 2005-67, sec. 4.02, 2005-2 C.B. at 731; Rev. Proc. 2006-41, sec. 4.02, 2006-2 C.B. at 779-780.  A per diem is treated as an M&IE only per diem if the employer pays the actual expenses for lodging directly to the provider of the lodging.  Rev. Proc. 2005-10,

---

[6]Each subsequent revenue procedure superseded the prior revenue procedure and restated the rules almost verbatim.

sec. 4.02; Rev. Proc. 2005-67, sec. 4.02; Rev. Proc. 2006-41, sec. 4.02. Rev. Proc. 2005-10, sec. 4.04(3), 2005-1 C.B. at 343, and its progeny provide special M&IE rates that transportation industry employees may use.

Rev. Proc. 2005-10, sec. 7.05, 2005-1 C.B. at 349, and its progeny provide that an employee may claim as an itemized deduction any expenses that exceed the amount deemed substantiated under section 4.02 of the revenue procedures if all of the expenses are substantiated, if the deemed substantiated portion of the per diem is included on Form 2106, and if any portion of the per diem allowance that exceeds the amount deemed substantiated is included in gross income. Substantiation of the expenses will not be required if the employee claims a deduction equal to or lesser than the amount computed under section 4.03 of the revenue procedures minus the amount deemed substantiated under sections 4.02 and 7.01 of the revenue procedures. Rev. Proc. 2005-10, sec. 7.05; Rev. Proc. 2005-67, sec. 7.05, 2005-2 C.B. at 737; Rev. Proc. 2006-41, sec. 7.05, 2006-2 C.B. at 785.

An employee who does not incur meal expenses while traveling away from home may use the optional rate of $3 per day to substantiate only incidental expenses for any CONUS or OCONUS[7] locality of travel instead of actual expenses. Rev. Proc. 2005-

---

[7]CONUS is an abbreviation for "continental United States" and OCONUS is an abbreviation for "outside the continental United States".

10, sec. 4.05, 2005-1 C.B. at 344; Rev. Proc. 2005-67, sec. 4.05, 2005-2 C.B. at 732; Rev. Proc. 2006-41, sec. 4.05, 2006-2 C.B. at 780; and Rev. Proc. 2007-63, sec. 4.05, 2007-2 C.B. at 812. Rev. Proc. 2005-10, sec. 6.05(4), 2005-1 C.B. at 348, and its progeny state that the amount of incidental expenses computed under section 4.05 of the revenue procedures is not subject to the section 274(n) limitation on the deductibility of food and beverage expenses.

### 1. Mr. Baker's Unreimbursed Employee Business Expenses

Mr. Baker testified to and entered into evidence documentation for travel expenses he incurred between Washington and Honolulu, Hawaii, and incidental expenses he incurred while in Honolulu. Because we find above that Mr. Baker's tax home was Honolulu, Hawaii, for the years in issue, Mr. Baker was not "away from home" for purposes of section 162(a)(2) when he was in Honolulu. Therefore, Mr. Baker is not entitled to deductions for the travel and incidental expenses he claimed for travel to Honolulu or incurred while he was in the Honolulu port for the years in issue.

Mr. Baker also had several days of travel that either began or ended away from his tax home of Honolulu. Any expenses Mr. Baker incurred on those days must be substantiated under the rules of section 274(d) and its regulations because Mr. Baker did

not receive a per diem from his employer and the expenses he claimed he incurred were for more than just incidentals.

Mr. Baker introduced into evidence his calendars for 2005, 2006, and 2007 and his certificates of discharge for the years in issue.  In 2005 Mr. Baker began and ended each of his shifts at his tax home, the port in Honolulu.  He is not entitled to deduct any additional expenses in excess of the incidental expenses respondent conceded for 2005.  See supra note 1.

In 2006 and 2007 Mr. Baker began or ended a voyage away from home on 8 days.  Mr. Baker testified to and presented other evidence for $76 of meal expenses and $40 for other expenses that he incurred while traveling away from home during 2006 and $23 of meal expenses that he incurred while traveling away from home for 2007.  Mr. Baker has substantiated these amounts and is entitled to the deductions he claimed for those days.[8]

### 2.   Mrs. Baker's Unreimbursed Employee Business Expenses

Mrs. Baker also testified to and entered into evidence documentation for travel expenses she incurred between Washington and New York, New York, and expenses incurred while in New York City.  Because we find above that Mrs. Baker's tax home was JFK she is not entitled to a deduction for the travel expenses she

---

[8]Seventy-five percent of Mr. Baker's meal expenses are deductible under the special rule for individuals subject to Federal hours of service in sec. 274(n)(3).

incurred for travel between Washington and New York or the expenses incurred in New York City.

The M&IE expenses Mrs. Baker incurred in excess of Delta's per diem while on layovers in Europe may be deductible if properly substantiated.[9]  See Rev. Proc. 2005-10, sec. 7.05; Rev. Proc. 2005-67, sec. 7.05; Rev. Proc. 2006-41, sec. 7.05.  Mrs. Baker testified that she did not keep track of her expenses while in Europe because she had a per diem.  Mrs. Baker may use the lesser of Delta's per diem or the Federal per diem rate for the locality of travel for the portion of her expenses that is deemed substantiated.  See Rev. Proc. 2005-10, sec. 4.02; Rev. Proc. 2005-67, sec. 4.02; Rev. Proc. 2006-41, sec. 4.02.  She may not use the Federal per diem for the locality of travel in addition to her Delta per diem to substantiate her expenses.

Mrs. Baker did not include Form 2106, as required, with her Federal income tax return for any of the years in issue, which if provided would have included the amount of her expenses that was deemed substantiated.  Although Mrs. Baker provided rotation numbers in her calendars, she did not provide the names of the

---

[9]Mrs. Baker testified that she did not keep receipts for expenses she incurred while in Europe because she received a per diem.  Mrs. Baker did note in her calendars for the years in issue that she incurred tips and testified that those tips were not reimbursed by Delta.  Although Mrs. Baker testified that she did not include expenses from Europe in her deductions for the years in issue, the tip amounts were included in computations for her expense totals for each year.

European cities or the dates on which she had layovers in those cities.[10] Without such information, the Court cannot determine which rate--Delta's per diem or the Federal per diem rate--should be used for the deemed substantiated portion of Mrs. Baker's expenses.[11]

Additionally, respondent made no adjustment to and the Court has no means of computing the amount of any of Mrs. Baker's expenses in excess of the deemed substantiated amount. Therefore, Mrs. Baker is not entitled to deduct any of the unreimbursed employee business expenses she claimed for 2005 or 2006 beyond what respondent has conceded.

III. Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a 20-percent accuracy-related penalty on the portion of an underpayment that is attributable to negligence or disregard of rules and regulations. Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and

---

[10]Petitioners introduced into evidence lists of cities and their corresponding per diems. Cities in the United States and Europe were highlighted. No further explanation of the lists was given at trial. If the lists were offered as the locations to which Mrs. Baker flew for the years in issue, the lists contradict Mrs. Baker's testimony that she flew only to European cities during the years in issue.

[11]It appears that respondent did not adjust petitioners' income to include any portion of Mrs. Baker's per diem that might have exceeded the amount deemed substantiated; thus, the Court does not address that issue.

the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, affd. 378 F.3d 432 (5th Cir. 2004).  In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or addition to tax is appropriate. Higbee v. Commissioner, supra at 446.  Respondent has met that burden here.

An accuracy-related penalty will not apply if the taxpayers demonstrate that there was reasonable cause for the underpayment and that they acted in good faith.  Sec. 6664(c)(1).  Section 1.6664-4(b)(1), Income Tax Regs., incorporates a facts and circumstances test to determine whether the taxpayer acted with reasonable cause and in good faith.  The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability.  Id.

After considering the totality of the facts and circumstances, we are satisfied that petitioners, who used the same C.P.A. for the years in issue that they had used for several prior years, acted in good faith and come within the reasonable

cause exception of section 6664(c)(1).  Accordingly, we hold that petitioners are not liable for the section 6662(a) accuracy-related penalties for the years in issue.

<u>Conclusion</u>

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that the arguments are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.